329 So.2d 821 (1976)
STANDARD BRANDS INCORPORATED
v.
DEPARTMENT OF HIGHWAYS, State of Louisiana, et al.
No. 10611.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
Rehearings Denied April 12, 1976.
Writs Granted June 2, 1976.
David S. Bell, Baton Rouge, for Standard Brands & Comm. Union Assur.
Robert J. Vandaworker, Baton Rouge, for Robert L. Davis and Ryder Truck.
William J. Doran, Jr., for State, Hwy. Dept.
Judith A. Chevalier, Baton Rouge, for U. S. F. & G.
Bernard Kramer, Alexandria, for Walter Mull.
John B. Noland and Boris F. Navratil, Breazeale, Sachse & Wilson, Baton Rouge, for Robert T. Wilson.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
LOTTINGER, Judge.
This is a suit for property damages filed by Standard Brands, Inc. against the Louisiana *822 Department of Highways, Robert Wilson, Ryder Truck Rentals, Inc., R. L. Smith Manufacturing Company and Robert L. Davis. From judgment in favor of the defendants, plaintiff has perfected this appeal.
This case is one of four suits consolidated for trial below arising out of the same accident. Our reasons for judgment in all four suits as well as the judgment in this case will be given in this opinion, however, separate judgment will be rendered in each of the other consolidated suits.
In suit number 10612, La.App., 329 So.2d 826, United States Fidelity & Guaranty Company, as the subrogee of R. L. Smith Manufacturing Company, Inc., seeks recovery for $4,595.54 from the State of Louisiana, through the Department of Highways, and Robert E. Wilson. The Department of Highways seeks contribution from Robert L. Davis and Robert E. Wilson.
In suit number 10613, La.App., 329 So.2d 826, Ryder Truck Rentals, Inc. seeks recovery of $9,103.44 from the Department of Highways, State of Louisiana, and Robert E. Wilson. The Department of Highways seeks contribution from Robert L. Davis, R. L. Smith Manufacturing Company and Robert E. Wilson.
In suit number 10614, La.App., 329 So.2d 827, Walter L. Mull seeks recovery of $32,000.00 for personal injuries and expenses from Robert L. Davis, R. L. Smith d/b/a R. L. Smith Manufacturing Company, R. L. Smith Manufacturing Company and the Department of Highways, State of Louisiana. R. L. Smith was dismissed from this suit on a declinatory exception. Commercial Union Assurance intervened to recover workman's compensation benefits paid to Walter L. Mull. The Department of Highways seeks contribution from Robert E. Wilson.
The facts point out that a trailer truck driven by Robert L. Davis, owned by Ryder Truck Rentals, Inc., but leased to R. L. Smith Manufacturing Company struck the headache bar located on the west side of the Atchafalaya River Bridge on U.S. 190 at Krotz Springs, Louisiana. The trailer truck operated by Robert L. Davis was being followed at a distance of 150 to 200 feet by a truck being driven by Walter L. Mull. When the Davis truck made contact with the headache bar, the rear portion of his trailer was sheared away, and the headache bar made contact with the truck being operated by Walter L. Mull. Mull received personal injuries as well as property damage to the truck which was owned by Standard Brands, Inc.
The evidence adduced at the trial below, which was not seriously in dispute, was summarized by the Trial Court as follows:
"On the west end of the old Atchafalaya River Bridge there was a so-called `headache' structure composed of an H beam upright on each side of the roadway connected across the tops by a 24 inch I beam so that there was a clearance of 14 feet 6 inches between the bottom of this I beam and the roadway surface. There was a sign on the crossbeam announcing this clearance. The standards on each side were encased to a depth of about 20 inches in a concrete footing two feet square and four feet deep.
"On October 28, 1972, Robert E. Wilson, a driver for Eagle Trucking Company with cargo measuring 14 feet 4 inches, for which he had a permit, came under this `headache' bar. When a small piece of angle iron allegedly was knocked from atop his trailer he backed down under the bar and proceeded under it a third time. There was no damage to his cargo.
"Sgt. R. L. Montgomery, III of the Louisiana State Police assisted the Chief of Police of Krotz Springs in investigating the incident of October 28, 1972. He was not sure the angle iron came from Wilson's trailer, which had no difficulty *823 in repassing under the bar which could have been scraped, but was not bent or twisted.
"Chief Soileau testified the Wilson truck passed twice under the bar without difficulty and there was no damage to the bar. He did not report the matter to the Highway Department.
"In some manner, however, the matter was reported to J. H. Drake, Chief Maintenance and Operations Engineer, who wrote a letter dated November 1, 1972, to W. C. Vincent, District Engineer at Lafayette asking for an accident report and stating that Section 10 would remove and replace the clearance bar `at the earliest possible date, compatible with other duties.' See Ryder Exhibit 16. Mr. Drake testified that he did not consider the matter a traffic hazard.
"On November 2, 1972, Henry Delrie, Bridge Maintenance Engineer for the Department of Highways, passed under the bar and noticed in the light from automobile headlamps that the standards had been knocked out of plumb about six to eight inches causing the cross piece to be lowered about four inches he judged. He called the Lafayette District office and reported the matter to a nightwatchman who answered the radio call. He thought the bar had been scraped but did not consider the situation dangerous.
"Gerald Lee Trahan, Engineer Inspector with the Lafayette District was called by the watchman about 5:45 [A.M.] and given such sketchy details that he decided to talk to Troop I who talked to Troop K of the Louisiana State Police who reported no trouble at the Krotz Springs Bridge. Trahan therefore concluded that they were being subjected to a prank call.
"Between 7:00 and 7:30 [A.M.] Charles R. Grave, an Equipment Specialist with the Department of Highways, after being delayed for about five minutes to allow a truck with a drag line boom to traverse the bridge, crossed under the clearance bar and found the standards leaning eastward `not too much.' He did not see the crossbar because of being involved in heavy traffic including trucks. He reported the leaning condition to Roy Gilbert, connected with the Lafayette District office, who met him one mile west of the bridge. Mr. Gilbert passed eastward under the bar and then turned around and passed westward under the bar, observing it while driving slowly.
While he did not consider it an immediate hazard, he called the Lafayette District Headquarters and told them it should be attended to. It was arranged that a crew would be sent out that day to take care of the matter.
"Robert L. Davis, the driver of the truck that struck the bridge testified he had gone over this bridge a number of times without difficulty. He noticed nothing out of order. The first notice of anything awry was a loud noise caused by the crossbar ripping through the trailer. The leading end of the trailer cleared the crossbar, the first contact being some four to five feet back of the front end. He assumed he was driving a thirteen and one half foot trailer but saw it measured by the trooper at thirteen feet eight inches.
"Walter Mull, the driver of the Standard Brands truck, the following one, was driving at about thirty miles per hour, when he heard a loud noise and saw a portion of the preceding trailer going up. He received injuries to the head, elbow and abdomen for which he was hospitalized from Thursday through Sunday. He was off work two to three weeks thereafter. His pains continued for about a month except that he still has some difficulties with his jaw."
The Trial Court held that the alleged negligence of Robert Wilson on October *824 28, was insufficient to convince the Court that the crossbar was struck and especially that any damage occurred to the clearance structure and, therefore, absolved him from any liability.
With regard to any negligence on the part of Robert L. Davis, the Court said that his trialer was marked as being 13 feet 6 inches in height and he assumed it to be so. Although the undamaged portion of the trailer, after the accident, was measured at 13 feet 8 inches, and the Trial Court assumed that a part of his rig even exceeded this height, it was shown that he had safely proceeded under this headache bar with the same rig on previous occasions without any problems. The Court also said that a rig over 13 feet 6 inches in height requires a permit but the issuance of a permit for a height up to 14 feet 6 inches would probably not have been questioned and the accident would still have occurred. The Court, therefore, absolved Mr. Davis from any negligence causing the accident.
The Court similarly reasoned that R. L. Smith Manufacturing Company and Ryder Truck Rentals, Inc. were free of negligence contributing to the accident because there was no evidence tending to show that they knew or should have known of the over-height status of the truck, but even if they had, and provided the height was 14 feet 6 inches or less, the accident would still have occurred because everyone thought the clearance of the Krotz Springs Bridge was 14 feet 6 inches.
With regard to the negligence, vel non, of the Department of Highways the Court cited LaBorde v. Louisiana Department of Highways, 300 So.2d 579, 583 (La.App. 3rd Cir. 1974), reh. denied (1974), writ refused (1974), as follows:
"The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it (Citations)."
The Trial Judge further concluded:
"There is no evidence, whatsoever, that the alleged incident of October 28, 1972, resulted in a condition dangerous in any degree. The letter of Mr. Drake referring to the incident certainly is not evidence of any knowledge of any hazardous condition.
"The proof of any negligence, or any knowledge of a hazardous condition must arise from the evidence as to the events of November 2nd. Mr. Delrie at about 5:30 [A.M.] noticed a leaning of the standards and a possible lowering of the crossbar to the extent of about four inches. He reported this to Lafayette District but did not consider it dangerous. Even if there had been no mixup in the Lafayette District Headquarters, there would have been no urgency since there would have been no hint of danger. Both Messrs. Graves and Gilbert saw the leaning standards but did not consider the situation dangerous. Mr. Gilbert reported it routinely by radio for handling not as an emergency but as an ordinary part of his District's work.
"Mr. Davis did not see anything out of the ordinary even though he had driven this truck and trailer over the bridge a number of times before. There is no evidence of anyone else having any notice or knowledge of a dangerous situation.
"The Court therefore finds that `the hazardous condition complained of was' not `patently or obviously dangerous to a reasonably careful and ordinarily prudent driver,' and that the department had no `notice, either actual or constructive, of the existence of the defect___.'"
Though we do not agree with the conclusion of the Trial Judge that the Department *825 of Highways had no notice, either actual or constructive, we can find no manifest error in the holding of the Trial Judge that "the hazardous condition complained of was not patently or obviously dangerous to a reasonably careful and ordinarily prudent driver."
For the reasons hereinabove assigned, the judgment of the Trial Court will be affirmed, all costs of this appeal to be paid by plaintiff.
AFFIRMED.
ELLIS, J., dissents and assigns reasons.
ELLIS, Judge (dissenting).
In these cases, the trial court, and the majority of this court, following the traditional negligence approach, found no negligence on the part of the Department of Highways or any of the other defendants, and dismissed all claims. Since the time of the judgment below, however, the Supreme Court has handed down its decision in Loescher v. Parr, 324 So.2d 441 (La., 1975). In that case, it was held that Article 2317 of the Civil Code made the persons who are legally responsible for the supervision or care of a thing liable for damage caused by a vice or defect in the thing. Their fault is presumed, and they can escape liability only by proving that the damage was caused by the fault of the victim, by the fault of a third party, or by an irresistible force.
In this case, there are two defective things involved: the headache bar, which was too low, for which the Department of Highways is responsible; and the Ryder trailer, which was too high, for which R. L. Smith Manufacturing Company, and Ryder Truck Rentals, Inc. are responsible. It is obvious that, had either the headache bar or the trailer been the proper height, this accident would not have happened. I therefore have no difficulty in concluding that the two defective things caused the accident and the consequent damage. The State, and Ryder, and Smith should therefore be presumed liable for damage suffered by innocent third parties.
I find no fault on the part of Mr. Mull or of Standard Brands, Incorporated, and they should be able to recover from the responsible parties, in solido, for their damages.
Finally, there is the question of whether the State might escape liability because the damage which lowered the headache bar was caused by a third person. The record reflects that a trailer 14 feet four inches in height was driven under the headache bar on October 28. There is no evidence that any agency of the State or any other person or thing struck the headache bar thereafter. However, we know that at 5:30 a.m. on the day of the accident, the south upright of the headache bar was bent, and the bar thereby lowered.
I am of the opinion that the logical inference is that the headache bar was struck and lowered by some third person for whom the State was not responsible. I believe that the State should be found liable only if it had sufficient notice, actual or constructive, to enable it to protect the public against the danger created by the defect in the headache bar. I find no error in the conclusion of the trial judge in that respect.
I therefore concur in the result in cases Nos. 10612 and 10613, in which recovery is denied to Ryder and U.S.F. & G., as subrogee of Smith.
In case No. 10611, I dissent from the refusal to grant recovery in favor of Standard Brands, Inc. against Ryder and Smith; and in case No. 10614 I dissent from the refusal to grant recovery in favor of Walter L. Mull. I further believe the intervention of Commercial Union Assurance Company for workmen's compensation benefits paid to Mr. Mull should be allowed. I concur in the judgments rendered in all other respects.