339 So.2d 780 (1976)
UNITED STATES FIDELITY AND GUARANTY COMPANY
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, et al.
RYDER TRUCK RENTAL, INC.
v.
STATE of Louisiana, DEPARTMENT OF HIGHWAYS.
Walter L. MULL
v.
Robert L. DAVIS et al.
STANDARD BRANDS, INC.
v.
DEPARTMENT OF HIGHWAYS, State of Louisiana, et al.
Nos. 57993, 58001, 58020, 58022 and 58021.
Supreme Court of Louisiana.
November 8, 1976.
Rehearings Denied December 10, 1976.
*781 Philip K. Jones, Marshall W. Wroten, Robert J. Jones, Doran & Kivett, William J. Doran, Jr., Sp. Asst. to Gen. Counsel, La. Dept. of Highways, Baton Rouge, for defendant-respondent in 57993, 58001, 58020, 58022 and 58021.
Judith Atkinson Chevalier, Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, for U.S. F & G., plaintiff-applicant in 57993 and for defendants-respondents in 58021, 58020, 58001 and 58022.
David S. Bell, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for intervenor-applicant in 58020 & plaintiff-applicant in 58021, for intervenor-respondent in 58022 and 57993 and for defendant-respondent in 58001.
John B. Noland, Breazeale, Sachse & Wilson, Baton Rouge, for Robert E. Wilson, respondent in 58020, 58021, 58022, 57993 and 58001.
Robert J. Vandaworker, Taylor, Porter, Brooks & Phillips, Baton Rouge, for plaintiff-applicant in 58001 and for defendant-respondent in 58020, 58021, 57993 and 58022.
Bernard Kramer, Law Offices of Bernard Kramer, Alexandria, for plaintiff-applicant in 58022 and for defendant-respondent in 58001, 58020, 58021 and 57993.
MARCUS, Justice.
This case involves four tort suits arising out of a single highway accident in which two trucks traveling in succession were struck by a highway headache bar spanning the roadway at a height lower than the posted maximum clearance. The owner-lessor and lessee of the trucks seek damages for cost of repair, loss of use and rental of substitute vehicles; the insurer of the cargo of one of the vehicles seeks compensation for amounts paid to the cargo owner. One of the drivers seeks damages for personal injuries sustained in the accident, and his employer's workmen's compensation insurer intervenes for benefits paid to the injured driver.
The suits were consolidated for trial below, whereupon the trial judge rendered judgment in favor of all defendants stating in his written reasons that he found no demonstration of negligence. With regard to the alleged liability of the Louisiana Department of Highways, the trial judge concluded that the condition of the headache bar was not patently or obviously dangerous and that the Highway Department had *782 no notice, actual or constructive, of a defect in the structure. Accordingly, he found no negligence on the part of the department, citing Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App.3d Cir. 1974).
Judgments of the trial court were affirmed on appeal to the First Circuit in separate judgments.[1] The appeals court noted its disagreement with the lower court's finding of "no actual or constructive notice" but declined to find manifest error in the holding that the condition complained of was not patently or obviously dangerous to a reasonably careful and prudent driver. We granted certiorari to review this decision. 333 So.2d 238, 239 (La.1976).

FACTS
At about 8:30 a.m. on November 2, 1972, Robert L. Davis, an employee of R. L. Smith Manufacturing Company, was driving a 1971 Ford truck and trailer (leased to R. L. Smith by Ryder Truck Rental) within the speed limit in an easterly direction on U.S. Highway 190. The truck was carrying a cargo of mobile home doors and windows manufactured by R. L. Smith and insured by United States Fidelity & Guaranty Company. Before the Smith truck could cross the old Atchafalaya River Bridge at Krotz Springs, it was necessary to first pass under a highway height marker pole, commonly referred to as a headache bar. This structure consisted of a steel I-beam spanning the width of the roadway and mounted atop two upright steel H-beams encased in concrete on either side of the highway. The headache bar was erected at a height of fourteen feet, six inches, the same height as the bridge itself, so that vehicles exceeding the maximum bridge height clearance would strike the headache bar rather than strike and damage the bridge. The height of the truck driven by Davis was well below the posted clearance height; it was marked as being thirteen feet, six inches high from the surface of the roadway and measurements taken by a state trooper after the November 2 accident confirmed that the truck did not exceed thirteen feet, eight *783 and one-half inches. Davis testified that he had driven the Highway 190 route and passed under the headache bar with the same rig on numerous occasions without encountering any difficulty. The last occasion was about a week before the accident. On November 2, 1972, Davis noticed nothing unusual about the headache bar as he traveled toward it. When his truck and trailer had partially cleared the crossbar, however, he heard a loud noise and saw through the rear view mirror that the headache bar was ripping through the roof and sides of the trailer, causing extensive damage to the vehicle and cargo.
Immediately behind the Smith truck driven by Davis was another tractor-trailer unit driven by Walter L. Mull for Standard Brands, Inc. Mull testified that he was traveling at about 30 miles per hour and had been following the truck ahead at a distance of about one hundred and fifty to two hundred feet when, without warning, he heard a loud noise and saw part of the Smith trailer "turn up into the road." Fearing that he might hit the vehicle ahead, Mull pulled the emergency brake valve and dove for the floor of the truck's cab to protect himself. Davis, who had proceeded ahead a short distance to get out of the way of the following truck, noted that the headache bar had been bent eastward and observed through his rear view mirror that the crossbar just cleared the hood of the Standard Brands vehicle before it crashed through the windshield and driver compartment, sheering off the top of the cab. As a result of the accident, Mull received personal injuries including contusions and lacerations about his face and upper torso. These injuries prevented him from working for several weeks, during which time he was compensated under a policy for workmen's compensation furnished by Commercial Union Assurance. The truck, trailer, and refrigeration unit driven by Mull, for which Standard Brands was responsible as lessee, was severely damaged in the accident.
In an effort to establish that the headache bar had been hit and damaged by a third party prior to the November 2, 1972 accident, testimony was adduced concerning an incident which occurred on October 28, 1972. On that date, Robert E. Wilson, a driver for Eagle Trucking Company, was traveling east on Highway 190 in a vehicle measured at fourteen feet, four inches high, for which a permit had been issued. As he passed through the headache bar at the west approach to the Atchafalaya Bridge, he was stopped from behind by a following automobile, the occupants of which claimed that a small piece of angle iron had fallen from stop the truck causing damage to the car's windshield. Without difficulty, Wilson backed down under the crossbar to discuss the problem. Sgt. R. L. Montgomery III and Krotz Springs Chief of Police, Fred J. Soileau, investigated the accident and testified that, while it was unclear if or why the piece of metal had fallen from the Eagle truck, it was certain that no damage whatsoever had been suffered by the headache bar as a result of this incident. Upon completion of the investigation, Wilson was escorted by Sgt. Montgomery through the headache bar and safely across the bridge. The Eagle truck experienced no difficulty in clearing either structure.
The Louisiana Department of Highways apparently received information concerning the October 28, 1972 incident to the effect that there had (been damage to the headache bar. During his testimony, James H. Drake, Chief Maintenance and Operations Engineer for the Department of Highways, identified a letter written by himself and dated November 1, 1972the day before the accident. While Drake could not recall the source of the information which prompted the letter and while he insisted that he did not consider the matter urgent, the communication nevertheless indicated an awareness of a defect in the headache bar structure inasmuch as it noted that the department would "plan on removing and replacing this clearance bar at the earliest possible date. ." No effort was made, however, to determine whether or not the height of the crossbar had been affected nor was any attempt made to warn *784 oncoming truck traffic of a possible obstruction. Had an on-the-spot investigation of the condition of the crossbar been conducted in conjunction with the November 1, 1972 letter, the reduced vertical clearance of the headache bar would probably have been discovered. Trooper J. C. Bertrand, Jr., one of the officers who investigated the accident, testified that one or two days before the accident he passed under the bar and noticed that it was leaning eastward.
On the morning of the accident, Henry Delrie, State Bridge Maintenance Supervisor for the Highway Department, passed under the west Atchafalaya Bridge headache bar at approximately 5:30 a.m. He noted that one of the upright support beams for the crossbar had been knocked out of plumb and was leaning about four to six inches toward the bridge in an easterly direction. He further observed that the crossbar itself was somewhat lower than it was supposed to be. Although Mr. Delrie testified that he did not consider the condition of the crossbar to constitute an immediate traffic hazard, he admitted that he reported the situation in an effort to avoid an accident. He radioed the information to the Highway Department's Lafayette District Office where the call was received by a night watchman, whose duty it was to relay such reports to Gerald L. Trahan, an engineering specialist in charge of bridge maintenance and inspection. According to the testimony of Mr. Trahan, the message he received was simply that there was a problem in the Krotz Springs area. It is unclear whether or not Mr. Delrie gave his name to the night watchman. At any rate, he was not contacted to give further details concerning the difficulty. Trahan called the Louisiana State Police to check on possible problems and was informed that there was no trouble in the Krotz Springs area. Based on this information, Trahan concluded that the call to the watchman must have been a prank. No one from the Highway Department was dispatched to investigate the Delrie report.
Between 7:00 and 7:30 a.m., an equipment specialist for the Highway Department, Charles R. Graves, passed under the headache bar and noted that it was leaning eastward. About one mile beyond the bridge, he met with another equipment specialist, Roy Gilbert, concerning an unrelated matter and mentioned the defective condition of the headache bar. Gilbert then drove slowly past the headache bar in both directions in order to investigate the situation. He verified that the south end of the structure appeared bent and was leaning toward the east about four to six inches. As soon as he cleared the highway traffic, Gilbert radioed Mr. Trahan reporting the situation and stating his opinion that the situation should be attended to. Again, no attempt was made to determine whether or not or to what extent the height of the crossbar had been altered. No efforts were made to dispatch a crew to set up warnings as to the defective structure. Nor did anyone call for assistance from the state police, although they apparently could have reached the scene in fifteen minutes or less and were available to aid the Highway Department with traffic security problems. Although Mr. Trahan proceeded to assemble a crew to repair the defective condition, unfortunately, the crew did not arrive until after the accident had occurred.

LIABILITY
La. Civil Code art. 2315 provides in relevant part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
It is elementary that, within the contemplation of article 2315, fault is the breach of a duty owed by one party to another under the particular facts and circumstances of a given case. The issues presented in the instant case for our consideration are: (1) whether any of the parties to this litigation were legally at fault in causing the November 2, 1972 accident; and (2) if so, what is the proper quantum of damages to be awarded.
After a careful examination of the record, we are in agreement with the finding *785 of both trial and appeal courts as to the liability of all parties except the Louisiana Department of Highways.
There is no evidence in the record to indicate that the incident involving the Eagle truck driven by Robert E. Wilson contributed in any way to the November 2, 1972 accident. The testimony of the investigating officers clearly indicates that, whether or not anything on the truck made contact with the headache bar, there was no damage to the upright supports or the crossbar itself. Nor, under the facts established in the record, can we find any negligence attributable to R. L. Smith or Ryder Truck Rental. Had the headache bar been maintained at the posted height of fourteen feet, six inches, the truck owned by Ryder and leased to Smith (whether measuring thirteen feet, six inches or thirteen feet, eight and one-half inches) would have easily cleared the crossbar. Davis, who had driven the same rig through the headache bar on previous occasions, had no reason to suspect that the headache bar was lower than its usual and posted height or that he would otherwise have any difficulty in passing underneath it. Approaching as he did from the west, with the headache bar leaning away from him, he did not perceive that the structure had been damaged. The general rule has been recognized in our jurisprudence that a motorist using a public highway has a right to presume, and to act upon the presumption, that the highway is safe for usual and ordinary traffic, either in daytime or at night, and that he is not required to anticipate extraordinary danger, impediments, or obstructions, to which his attention has not been directed and of which he has not been warned. Jacobs v. Jacobs, 141 La. 272, 74 So. 992 (1917); Petree v. Crowe, 272 So.2d 399 (La.App.2d Cir. 1973), writ refused 274 So.2d 709 (La.1973); Falgout v. Falgout, 251 So.2d 424 (La. App.1st Cir. 1971); Kilpatrick v. State, 154 So.2d 439 (La.App.2d Cir. 1963); Reeves v. State, 80 So.2d 206 (La.App.2d Cir. 1955). Accordingly, we find no negligence on the part of Davis. Moreover, once Walter Mull realized what was happening to the truck just ahead of him, we are satisfied that he did everything possible and prudent to avoid the accident. By pulling the emergency brake valve and diving for the floor of the cab, he averted what otherwise might have been a fatality.
We cannot agree, however, with the finding of the trial and appeal courts that the Louisiana Department of Highways was not negligent. The appellate courts of this state have on frequent occasions articulated principles which govern the liability of the Highway Department for accidents which occur on public highways. The law is settled that the Department of Highways is not responsible for every accident which may occur on the state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways. Wilkinson v. American Insurance Co., 311 So.2d 584 (La.App.3d Cir. 1975); Doucet v. State, Department of Highways, 309 So.2d 382 (La.App.3d Cir. 1975), writ refused 312 So.2d 340 (La.1975); Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App.3d Cir. 1974), writ refused 303 So.2d 182 (La.1974). Generally, it is the duty of the Highway Department to construct and maintain the highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. Coleman v. Houp, 319 So.2d 831 (La.App.3d Cir. 1975). In the performance of this duty, the character of the road and the probable traffic must be kept in view, as the requirement of reasonable safety implies reasonable safety for any lawful or proper purpose. Kilpatrick v. State, 154 So.2d 439 (La. App.2d Cir. 1963). In order to hold the Department of Highways liable for an accident caused by an unsafe or hazardous condition it must be shown that the Highway Department had prior notice, either actual or constructive, of the dangerous condition and had sufficient opportunity to remedy same or at least to alert and warn motorists of its presence and failed to do so. Coleman v. Houp, 319 So.2d 831 (La.App.3d Cir. 1975).
*786 It can hardly be disputed from the testimony in the record that the Highway Department had actual knowledge that a defect existed in the headache bar at the west end of the Atchafalaya Bridge. The letter dated November 1, 1975 and the independent observations of four different highway employees adequately established this fact. Common sense dictates that damage to a horizontal bar spanning the width of a roadway at a posted height of fourteen feet, six inches must constitute a serious hazard to overheight trucks which have a right to rely on the posted height unless the actual height is patently different from that represented. Yet, the record reflects that neither in response to the November 1, 1972 letter nor the 5:30 a.m. report of Henry Delrie was any consideration given to sending Highway Department personnel to the bridge site in order to evaluate the situation and/or warn oncoming truck traffic of the lowered crossbar. The testimony at trial revealed that the state police were available for traffic security and could have responded to a call for assistance within fifteen minutes. Hence, even as late as 7:30, when Roy Gilbert radioed the district office concerning the damaged structure, a call to the state police might have averted the ensuing accident which did not occur until approximately 8:30 a.m. Moreover, the testimony reflects that someone from the Highway Department itself could probably have reached the scene prior to the accident if prompt action had been taken. In sum, no efforts were directed toward determining the exact extent of the damage to the structure nor was any attempt made at warning oncoming truck traffic of the obstruction in spite of the knowledge that Highway 190 is heavily traveled by large trucks for which the state routinely issues cargo permits at least up to fourteen feet, four inches in accordance with La.R.S. 32:388 and although, as revealed by the testimony, a truck's striking the headache bar is not an infrequent occurrence. Under the facts and circumstances of the instant case, we conclude that the failure of the Highway Department to heed the warnings of its own employees, to investigate and evaluate the hazardous condition, and to take measures to secure assistance in providing traffic security, proximately caused the November 2, 1972 accident and the consequent damages suffered by the plaintiffs in this case. Our finding of negligence and liability under Civil Code art. 2315 makes it unnecessary for us to consider the applicability of La.Civil Code art. 2317 as applied in our decision in Loescher v. Parr, 324 So.2d 441 (La.1975).

QUANTUM
The record fully supports the claim for damages sustained by Standard Brands, Inc. which we fix as follows: cost to repair trailer-truck in the amount of $5,836.87; cost to repair Fruehauf trailer in the amount of $950.59; cost to repair Thermo-King unit in the amount of $379.02; expense of appraisal in the amount of $117.73; expense for wrecker service in the amount of $88.40; cost of rental of substitute vehicle in the amount of $1,997.68; or a total amount of $9,370.29.
By joint stipulation, the claim of United States Fidelity & Guaranty Company, as subrogee of R. L. Smith Manufacturing Company, was set at $4,595.54. In accordance with said stipulation, we fix damages of United States Fidelity & Guaranty Company at $4,595.54.
The record also supports the fixing of damages sustained by Ryder Truck Rental, Inc. as follows: cost to repair trailer in the amount of $7,153.80; expense for wrecker service in the amount of $75.00; loss of use of trailer in the amount of $1,874.64 ($12.84 per day × 146 days); or a total amount of $9,103.44.
Finally, we must determine the amount of damages for personal injuries sustained by Walter L. Mull as a result of the accident. Mr. Mull was taken by ambulance from the scene of the accident to the Opelousas General Hospital where he was treated in the emergency room by Dr. Emile K. Ventre. According to Mr. Mull, he had lacerations to his face and head and was suffering pain in his jaw and shoulder *787 which extended into his chest. At trial, there was evidence of permanent scarring below the lobe of Mr. Mull's left ear extending down his jaw and the side of his chin. There was also evidence of a scar extending from behind his left ear down to his left arm pit. He was hospitalized from Thursday (date of accident) until his discharge on the following Sunday. He remained at home about three weeks before returning to work. Mr. Mull stated that he still had some difficulty with his jaw when eating and shaving. Dr. Ventre's deposition was introduced at trial wherein he stated that Mr. Mull had suffered lacerations to his face and the upper part of his trunk and had sustained numerous contusions and bruises. The laceration to the left jaw was three and one-half inches long and extended into the parotid salivary gland. It was necessary that this would be sutured. Mr. Mull also had a four inch laceration in the left parietal region of the skull which required suturing. Additionally, there were two lacerations of the lower lip which were closed with sutures. Dr. Ventre further testified that Mr. Mull had other multiple deep lacerations of the right arm, face and neck which were cleaned and dressed. The doctor stated that, since Mr. Mull wanted to go home, he was released to his family physician after several days at the hospital and that he had not seen Mr. Mull since that time.
Under the facts and circumstances of this case, we consider that an award of $7,500.00 would be adequate and fair for the personal injuries sustained by Mr. Mull as a result of the accident. However, this amount will be subject to a reduction in the amount of $507.10, representing the stipulated amount of benefits paid by Mr. Mull's employer's workmen's compensation insurer (Commercial Union Assurance) and intervenor in these proceedings.

DECREE
For the reasons assigned:
The judgment in favor of Department of Highways, State of Louisiana, and against Standard Brands, Inc. in Standard Brands, Inc. v. Department of Highways, State of Louisiana, et al., is reversed and set aside and judgment is rendered herein in favor of plaintiff, Standard Brands, Inc., and against defendant, Department of Highways, State of Louisiana, in the full amount of $9,370.29, together with legal interest thereon from date of judicial demand until paid and all costs of these proceedings insofar as permitted by La.R.S. 13:4521. In all other respects, the judgment of the court of appeal affirming the judgment of the district court is affirmed.
The judgment in favor of Department of Highways, State of Louisiana, and against United States Fidelity & Guaranty Company in United States Fidelity & Guaranty Company v. Department of Highways, State of Louisiana, et al., is reversed and set aside and judgment is rendered herein in favor of plaintiff, United States Fidelity & Guaranty Company, and against defendant, Department of Highways, State of Louisiana, in the full amount of $4,595.54, together with legal interest thereon from date of judicial demand until paid and all costs of these proceedings insofar as permitted by La.R.S. 13:4521. In all other respects, the judgment of the court of appeal affirming the judgment of the district court is affirmed.
The judgment in favor of Department of Highways, State of Louisiana, and against Ryder Truck Rental, Inc. in Ryder Truck Rental, Inc. v. Department of Highways, State of Louisiana, et al., is reversed and set aside and judgment is rendered herein in favor of plaintiff, Ryder Truck Rental, Inc., and against defendant, Department of Highways, State of Louisiana, in the full amount of $9,103.44, together with legal interest thereon from date of judicial demand until paid and all costs of these proceedings insofar as permitted by La.R.S. 13:4521. In all other respects, the judgment of the court of appeal affirming the judgment of the district court is affirmed.
The judgment in favor of Department of Highways, State of Louisiana, and against Walter L. Mull and Commercial Union Assurance in Walter L. Mull v. Robert L. *788 Davis, et al., is reversed and set aside and judgment is rendered herein in favor of plaintiff, Walter L. Mull, and intervenor, Commercial Union Assurance, and against defendant, Department of Highways, State of Louisiana, in the amounts of $6,992.90 to Walter L. Mull and $507.10 to Commercial Union Assurance, together with legal interest on these amounts from date of judicial demand until paid and all costs of these proceedings insofar as permitted by La.R.S. 13:4521. In all other respects, the judgment of the court of appeal affirming the judgment of the district court is affirmed.
NOTES
[1] Court of appeal's reasons for judgment were rendered in a single opinion, Standard Brands, Inc. v. Department of Highways, State of Louisiana, et al. In that suit, Standard Brands sought damages (wrecker service; cost of repairs to tractor-truck, trailer, Thermo-King unit; appraisal expense and vehicle rental) in a total amount of $9,353.23 from Louisiana Department of Highways, Robert E. Wilson, Ryder Truck Rental, Inc., R. L. Smith Manufacturing Company and Robert L. Davis. Department of Highways asserted a third party demand against Robert E. Wilson. Trial court rendered judgment in favor of defendants, dismissing plaintiff's suit. Department of Highways' third party petition was also dismissed. Court of Appeal affirmed. 329 So.2d 821 (La. App.1st Cir. 1976).

In United States Fidelity & Guaranty Company v. Department of Highways, State of Louisiana, et al., U.S.F. & G., as subrogee of R. L. Smith Manufacturing Company, sought damages to cargo carried in the Ryder Rental truck in the total amount of $4,595.54 from Louisiana Department of Highways and Robert E. Wilson. Department of Highways asserted a third party demand against Robert E. Wilson. Trial judge rendered judgment in favor of defendants, dismissing plaintiff's suit. Department of Highways' third party petition was also dismissed. Court of appeal affirmed. 329 So.2d 826 (La. App.1st Cir. 1976).
In Ryder Truck Rental, Inc. v. Department of Highways, State of Louisiana, et al., Ryder sought damages (cost of repair to trailer, towing fee and loss of use) in a total amount of $9,103.44 from Louisiana Department of Highways and Robert E. Wilson. Department of Highways asserted a third party demand against Robert E. Wilson. Trial court rendered judgment in favor of defendants, dismissing plaintiff's suit. Department of Highways' third party petition was also dismissed. Court of appeal affirmed. 329 So.2d 826 (La.App.1st Cir. 1976).
In Walter L. Mull v. Robert L. Davis, et al, Mull sought damages for personal injuries in the amount of $32,000.00 from Louisiana Department of Highways, Robert L. Davis, R. L. Smith Manufacturing Company, R. L. Smith, d/b/a Smith Manufacturing Company (last named defendant dismissed from suit on declinatory exception). Department of Highways asserted a third party demand against Robert E. Wilson. Commercial Union Assurance intervened to recover workmen's compensation benefits paid to Mull in the amount of $507.60. Trial court rendered judgment in favor of defendants, dismissing plaintiff's suit. Department of Highways' third party petition and Commercial Union Assurance's petition of intervention were also dismissed. Court of appeal affirmed. 329 So.2d 827 (La.App.1st Cir. 1976).