455 So.2d 1226 (1984)
Lonnie CRAFT
v.
CALDWELL PARISH POLICE JURY, et al.
No. 16161-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
*1228 Paul B. Wilkins, Columbia, for plaintiff-appellee-appellant Lonnie Craft.
Don C. Burns and Iley H. Evans, Columbia, for defendant-appellant Caldwell Parish Police Jury.
Cotton, Bolton & Hoychick by John Hoychick, Jr., Rayville, for defendant-appellee Marie Louise Snellings, Individually and in her capacity as the Testamentary Executrix of the Succession of George H. Snellings, Jr. and Louisiana Farm Bureau Mut. Ins. Co.
Before HALL, JASPER E. JONES and SEXTON, JJ.
JASPER E. JONES, Judge.
Caldwell Parish Police Jury, a defendant, appeals a judgment rendered against it in the amount of $11,100.00 in favor of Lonnie Craft, plaintiff, for damages sustained by him as a result of damage to his cattle trailer caused when a parish bridge collapsed beneath it. The judgment rejected plaintiff's demand for these damages against George M. Snellings, Jr. and Marie Louise Snellings aka Snellings Farm, and their insurer, Louisiana Farm Bureau Mutual Insurance Company. Plaintiff appeals the judgment rejecting his demands against the Snellings and their insurer. George M. Snellings, Jr. died while this case was pending on appeal and his succession representative, his duly qualified testamentary executrix, Marie Louise Snellings, has been substituted for him as a party defendant.

FACTS
In the spring of 1979, because of flooding conditions affecting the Snellings' farm in Caldwell Parish, they moved their cattle herd from this farm to a farm operated by them north of Monroe, Louisiana. After the flood conditions terminated the Snellings made plans to return the cattle to their Caldwell Parish farm. In order to reach this farm it was necessary to traverse a rural Caldwell Parish road referred to in the pleadings as Parish Road # 32.[1] The right of way for this road was dedicated to the Caldwell Parish Police Jury on April 27, 1970, by Bodcow Company, owner *1229 of the land subject to the right of way, and the dedication was accepted by the Caldwell Parish Police Jury as reflected by the formal right of way grant which is of record in the conveyance records of Caldwell Parish. The record does not establish who constructed the bridge located on this road which collapsed under the weight of plaintiff's trailer loaded with cattle. However, the record establishes the police jury built and worked the road following the dedication and did some work on the bridge immediately before and after this accident occurred and perhaps at earlier times.
The Snellings employed Archie McClanahan to perform various duties for them in connection with the cattle operation. He was referred to by some of the witnesses as their foreman. McClanahan observed that the bridge was in a state of disrepair and was not safe to cross with the cattle. McClanahan advised the Snellings of the problem with the bridge and was instructed by them to contact the police jury and have the bridge repaired. McClanahan, and Mrs. Snellings, contacted the police jury and requested it to repair the bridge in order that they could move the cattle. McClanahan called the parish road superintendent, Mr. Harrison, and Mrs. Snellings contacted the police juror, Mr. Moreno, who was elected from the ward in which the road and bridge was located. Moreno and Harrison were told the bridge needed repair in order that cattle could be moved over it. Moreno contacted Harrison and requested him to check the bridge.
After this request for repair was made to the police jury, some work by it was performed on the bridge. The extent of this work is not totally clear from the record. Harrison testified the only work performed on the bridge was the replacement of the capsills which are the timbers which cross traversely under the bridge decking and rest immediately upon top of the bridge pilings. He testified this work was done by lifting the bridge decking from the pilings with a piece of parish machinery. Other employees of the jury who performed work on the bridge testified four of the planks in the bridge decking were replaced and that runners were laid lengthwise across the top of the bridge decking. McClanahan stated that after the police jury had worked on the bridge he checked the bridge and found the only work performed on it by the police jury was the re-nailing of the old bridge decking with 15 or 20 nails.
McClanahan, at the time of his initial examination of the bridge, stated there were some loose planks on the bridge decking where the water had been over it and that about a dozen of the timbers used in construction of the bridge decking appeared weakened and needed to be replaced by new timbers. At the time of McClanahan's examination of the bridge following the police jury's repair of it, he stated that only the loose planks had been nailed and that no other work had been performed on the bridge and the weakened timbers which he observed had not been replaced. McClanahan was concerned about the safety of the bridge after the police jury worked on it and again called Mr. Harrison about the bridge and was advised by Harrison the bridge was all right and would hold up. Following McClanahan's observation of the bridge repair performed by the police jury, he personally secured sixteen 2X6's from the Snellings' farm and with them braced the pilings under the bridge. He performed no work on the bridge decking.
McClanahan, on instructions by the Snellings, contacted James Hopper who had on prior occasions hauled cattle for the Snellings' farm, and requested Hopper to move a load of the cattle. Hopper had, a few months before this, sold his 18 wheeler cattle truck and trailer to Lonnie Craft and he secured Craft to haul the cattle for the Snellings, although neither McClanahan nor the Snellings were advised that Craft would haul the cattle rather than Hopper.
On July 13, 1979, the day following McClanahan's supplemental work on the bridge, the cattle moving operation was undertaken. McClanahan, with a pickup truck and a gooseneck type cattle trailer, went to the Snellings' farm and secured a *1230 load of cattle. He had earlier made arrangements with Hopper for him to also move cattle on this date. McClanahan was loading cattle at the Snellings' farm north of Monroe when Lonnie Craft arrived with his 18 wheeler cattle moving rig to secure a load of cattle. McClanahan departed with his load of cattle before Craft and never advised Craft of the condition of the bridge.
Mrs. Snellings, who was at the farm while the cattle were being loaded, advised Craft as to the destination of the cattle and the route required to reach it. Mrs. Snellings, who had earlier been advised by the police jury that the bridge had been repaired, told Craft the bridge on the road approaching her farm had recently been repaired by the police jury but he should have no trouble crossing it. McClanahan, with the pickup truck and gooseneck trailer load of cattle safely crossed the bridge. Craft had never crossed the bridge before. When he arrived at the bridge, he observed the new planks on the bridge and felt it was safe to cross. He put the truck in low gear and eased across the bridge at a speed of about 5 m.p.h., and just as the tractor cleared the bridge on the other side, the bridge decking collapsed and the trailer fell and came to rest upon the pilings. The record does not establish the weight of the trailer but the 37 cattle in it were estimated to weigh 600 pounds each which would have made the cattle weigh approximately 11 tons. The cattle were safely removed from the trailer, but the trailer was damaged to the extent of $8,700.00 and a delay of 6 weeks would be required before it could be fully repaired.
The plaintiff initially sued the Caldwell Parish Police Jury contending it was liable on the basis of negligence and the doctrine of strict liability for the damages to his trailer and for his loss of income during the required repair period. Plaintiff, before trial, joined the Snellings and their insurer contending they were solidarily liable with the police jury for the damages he sustained.
The trial judge found the road and the bridge were part of the police jury road network and the police jury knew the bridge was defective and failed to adequately repair it before the accident. The trial judge found the police jury failed to post any warning signs on the bridge advising users of the road the bridge would not support loads which the police jury should have ordinarily expected to be placed upon it in the farming area. The trial court found the police jury liable on the basis of negligence and also on the theory of strict liability and found plaintiff was neither guilty of contributory negligence nor were his damages sustained by virtue of his fault. The trial court held the Snellings owed no duty to plaintiff pertaining to the repair of the bridge and rejected his demands against them and their insurer.
The police jury brief specifies as error the trial judge's finding of strict liability contending primarily the plaintiff's loss was due to victim fault which precludes recovery under strict liability. The police jury does not strongly argue the bridge was not defective but contends in brief it had no duty to warn of this defective bridge because Craft had the constructive knowledge the bridge was defective because he knew it had been recently repaired, and for this reason he was guilty of contributory negligence. The police jury also assigns as error that the trial court's award was excessive.
Craft assigns as error the trial court's rejection of his demands against the Snellings and their insurer, contending McClanahan had a duty to advise him the bridge was defective. He argues McClanahan had violated this duty and for this reason the Snellings and their insurer are legally responsible for McClanahan's breach of duty under the doctrine of respondeat superior.

LIABILITY OF THE POLICE JURY
The parish is not responsible for every accident which may occur on its highways nor is it the guarantor of the safety of travelers thereon or an insurer against all injury which may result from defects in *1231 its highway. It is the duty of the parish to maintain its roads, highways and bridges[2] in a reasonably safe condition for persons exercising ordinary care and reasonable prudence. In the performance of this duty the character of the road and probable traffic must be kept in view, as reasonable safety implies reasonable safety for any lawful or proper purpose. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975); U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780 (La. 1976); Shively v. Pickens, 346 So.2d 1314 (La.App.3d Cir.1977); Herrington v. Franklin Parish Police Jury, 404 So.2d 1322 (La.App.2d Cir.1981); Bush v. State, Through Dept. of Hys., 395 So.2d 916 (La. App.2d Cir.1981). See also Robinson v. Beauregard Parish Police Jury, 351 So.2d 113 (La.1977). This duty also includes the duty to provide adequate warnings against dangerous conditions. U.S.F. & G. Co. v. State, Dept. of Highways, supra; Shively v. Pickens, supra; Bush v. State, Through Dept. of Hys., supra.
The general rule is the motorist using the highway has a right to presume the highway is safe for usual and ordinary traffic, and he is not required to anticipate danger to which his attention has not been directed and of which he has not been warned. U.S.F. & G. Co. v. State, Dept. of Highways, supra. In order for the police jury to be found liable for damages sustained because of a defect in the highway on the basis of negligence, it must be shown to have actual or constructive knowledge of the defect at a time when it had sufficient opportunity to repair the defect or at least warn the motorist of its presence and fail to do so. U.S.F. & G. Co. v. State, Dept. of Highways, supra.
The parish road superintendent and two members of the parish bridge crew who had worked on the defective bridge, testified that it remained unsafe after the work was performed on it. These witnesses establish the repair work was superficial and grossly inadequate. The road supervisor testified that he had formerly operated a road grader on this road which weighed 22,000 pounds but he discontinued crossing the bridge on this machine about three years earlier because he feared it might collapse under the weight of the grader. One of the bridge crew testified he occasionally operated a parish truck and that he would not have driven his truck over this bridge.
The road superintendent and the police juror, Moreno, were advised that the Snellings intended to haul cattle over the bridge at the time they were requested to repair it.
Mrs. Snellings testified she was advised by the police jury the bridge had been repaired and McClanahan testified that after the jury worked on the bridge he was advised by the road superintendent that the bridge was strong enough for the cattle to be hauled over it. There is no evidence that the Snellings were ever advised by the police jury that the bridge was not strong enough for cattle to be hauled across it, nor did the police jury install any weight limit signs or other warnings to traffic using the bridge that it was defective. Whether or not the police jury had initially constructed the bridge is of no significance. The jury had built the road on which the bridge was an essential part nine years before the accident. It maintained the road and the jury worked on the bridge before the accident. The jury replaced the bridge after the accident.
The jury owed a duty to the plaintiff to maintain the bridge in a reasonably safe condition for its contemplated use of which it had been fully advised. The jury owed a duty to warn Craft the bridge was not safe for travel by heavy cattle trucks. The police jury violated each of these duties and its negligence caused the damages sustained by plaintiff.
*1232 The jury contends that even if its negligence was a cause of plaintiff's damages he should still be denied recovery because his contributory negligence was a contributing cause of the accident.
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own safety and protection, that standard being that of a reasonable man under like circumstances. U.S.F. & G. Co. v. State, Dept. of Highways, supra; Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977).
Plaintiff had no prior knowledge of the condition of the bridge as he had never crossed it before. He was advised by Mrs. Snellings that it had been recently repaired and that he should have no trouble crossing it. He knew that McClanahan was in front of him with a gooseneck trailer loaded with cattle and he had no reason to believe this load of cattle had not safely crossed the bridge. When plaintiff arrived at the bridge he observed the new planks that had been installed in the bridge decking and the new runners across it. These indications of recent repair, together with the absence of any weight limitation or other warning signs, indicated that all repair necessary to make the bridge safe for crossing with the load of cattle had been performed. He slowed his vehicle to a speed of five miles per hour to cross the bridge. On these facts the trial judge found plaintiff free of negligence and we find no error in his conclusion. The plaintiff's conduct was that of a reasonable man under the circumstances.
Because we find the police jury liable to plaintiff under the negligence theory we find it unnecessary to discuss its liability to plaintiff under the theory of strict liability.
The record contains substantial evidence as to the cost of repair of the trailer and loss of income which would be sustained by plaintiff during the six weeks required for repair. The trial judge made the damage award based upon this evidence. We find no manifest error in the trial judge's damage determination.

LIABILITY OF THE SNELLINGS AND THEIR INSURER
The plaintiff contends that Archie McClanahan should have warned him of the defects in the bridge.
McClanahan testified the bridge was defective before it was repaired by the police jury:
. . . . .
A. Well, the bridge just looked to me like it was in bad shape...
. . . . .
Q. How many timbers could you tell looked like were weakened and needed replacing?
A. About a dozen.
. . . . .
Q. And in your opinion, at least twelve of those needed replacing?
A. Well, not necessarily the piling; no. I thought the timbers on top of it probably needed replacing.
After the police jury had worked on the bridge McClanahan testified the bridge crew did very little to the bridge.
. . . . .
Q. And what did the crew do to the bridge?
A. Umph. Very little. They put about, I'd say from fifteen to twenty nails in it, and that's it.
. . . . .
Q. Did they put any new boards on it?
A. No, sir. They didn't.
. . . . .
After McClanahan saw what little the police jury had done to the bridge he personally installed sixteen braces on the pilings beneath the bridge the day before the cattle were moved, but did no work on the decking of the bridge. He testified:
. . . . .
Q. Now, you said earlier that you thought that there was a problem *1233 with the decking on top of the bridge.
A. It was.
Q. Is that correct?
A. That's right.
Q. Did you do anything to the decking 
No, sir.

. . . . .
The evidence establishes the decking of the bridge collapsed under the weight of the cattle trailer leaving it resting upon the piling. The stringer boards in the decking which are attached to the capsill collapsed. The stringers are the timbers to which the surface planks are nailed to form the decking.
The testimony of McClanahan establishes that he was very familiar with the deck portion of the bridge and was of the opinion it was weak and that at least twelve timbers in this portion of the bridge needed replaced. The evidence also established that only four boards on the deck of the bridge were replaced. McClanahan testified that none were replaced but it is clear that at least eight weak timbers which McClanahan considered should be replaced were not replaced and this was the condition of the bridge on the morning that he called Hopper to transport the cattle to the Snellings' farm.
McClanahan was aware that Hopper sent Craft with the 18 wheeler rig to move the cattle because he saw Craft at the Snellings' farm north of Monroe preparing to load the cattle. He testified:
. . . . .
Q. You knew he was going to use that truck with cowto haul
A. I knew he had that truck at that time...
Q. And at that time when you saw him going up there to load up, you knew he was going to have to cross that bridge that you had worked on?
A. Yes. Sure, I knew he was going to have to cross it.
Even though McClanahan was aware of the weak condition of the bridge and of the 18 wheeler which was to be used to haul the Snellings' cow herd he did not warn Craft of the danger.
Q. Did you tell him that the bridge was weak?
A. No, I didn't tell him anything.

. . . . .
The trial court found no duty was owed to Craft by McClanahan and the Snellings pertaining to the bridge. The issue presented is, considering all the knowledge possessed by McClanahan, was he under a duty to warn Craft of the defects in the bridge.
Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk or harm. It is a departure from the conduct expected of a reasonable, prudent man under like circumstances. Pence v. Ketchum, 326 So.2d 831 (La.1976).
In the case of Straley v. Calongne, supra, the court set forth the criteria to be used in determining if a legal duty exists under a given set of circumstances. The court there said:
Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties... In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances...
In the case of Seals v. Morris, 410 So.2d 715 (La.1981), the court sets forth the test for determining the existence of a legal duty as follows:
La.Civ.Code art. 2315 provides in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
La.Civ.Code art. 2316 further directs:
Every person is responsible for the damage he occasions not merely by his *1234 act, but by his negligence, his imprudence, or his want of skill.
Under these articles, the elements of a cause of action are fault, causation and damage. The existence of a legal duty coupled with a breach of that duty are prerequisites to any determination of fault. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. Roberts v. State, Through Louisiana Health and Human Resources Administration, 404 So.2d 1221 (La.1981); Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977); A breach of a legal duty that causes damage to another makes the offender liable under the above articles.
Craft was not an isolated motorist using Caldwell Parish Rural Highway No. 32 which had a defective bridge located in it, of which McClanahan had detailed knowledge, who had no connection or relationship to McClanahan. On the contrary, Craft was on this road and crossed this bridge as a result of the direct solicitation of McClanahan. McClanahan knew he was loading the cattle as a result of his call to Hopper; McClanahan knew that Craft had to cross the bridge with the heavy rig; McClanahan knew the bridge was defective. Because of the relationship between McClanahan and Craft and the facts known to McClanahan, his obligation to conform to the standard of conduct of a reasonable man placed him under a duty to advise Craft the bridge was defective. McClanahan breached this duty and caused the damages sustained by Craft.
An employer is liable for a tort committed by his employee who is acting in the scope of his employment in the exercise of duties for which he is employed. LSA-C.C. 2320; Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968); LeBrane v. Lewis, 292 So.2d 216 (La.1974); Camatsos v. Aetna Cas. & Sur. Co., 428 So.2d 1320 (La.App.3d Cir.1983).
When the actionable negligence of two tort feasors contributes in causing harm to a third party, each of them is responsible for the damage. They are solidarily liable. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), and authorities therein cited.
McClanahan breached his duty to Craft while acting in the course and scope of his employment for the Snellings and they, along with their insurer, were liable with the police jury, in solido, for the damages sustained by Craft as a result of the defective bridge.
We REVERSE AND SET ASIDE that part of the trial court judgment rejecting plaintiff's demands against the Snellings and their insurer and we RECAST the judgment appealed to omit the third and fourth paragraphs and REVISE paragraph two to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, LONNIE CRAFT, and against the defendants, CALDWELL PARISH POLICE JURY, MARIE LOUISE SNELLINGS, INDIVIDUALLY AND IN HER CAPACITY AS THE DULY QUALIFIED TESTAMENTARY EXECUTRIX OF THE SUCCESSION OF GEORGE M. SNELLINGS, JR. and LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY, IN SOLIDO, IN THE AMOUNT OF ELEVEN THOUSAND ONE HUNDRED AND NO/100 ($11,100.00) DOLLARS together with legal interest thereon from date of judicial demand until paid, and for all cost."
As AMENDED the judgment is AFFIRMED at the cost of the defendants.
NOTES
[1] The cattle were not initially moved from the farm over this road but the record does not clearly establish what alternative route was used.
[2] LSA-R.S. 48:1(11)

"Highway" means a public way for vehicular, mounted, and pedestrian traffic, including the entire area dedicated thereto and the bridges, culverts, structures, appurtenances, and features necessary to or associated with its purposes. (emphasis supplied)