STOULIG, Judge.
Plaintiff, Philip Glenn Straley, filed suit for personal injuries he sustained when an elevator-hoist fell in a building leased by his employer, Smith-Willow Distributing, Inc., from defendant, Calongne Drayage & Storage, Inc. Plaintiff alleged his injury resulted from the negligent design of an unsafe elevator.
Defendant denied negligence and alternatively pleaded either plaintiff was contribu-torily negligent or Smith-Willow was negligent. Then, assuming the position of third party plaintiff, Calongne sought indemnification from Smith-Willow for any amount it was cast in judgment under a hold harmless provision in their contract of lease.
Aetna Casualty and Surety Company had paid and was paying workmen’s compensation benefits to plaintiff at the time of the trial, and it intervened for reimbursement of any sums paid should the plaintiff be successful in his suit.
From an adverse judgment awarding plaintiff $25,000; awarding intervenor the reimbursement of compensation payments; *889 and dismissing defendant’s third party petition, Calongne has appealed.
On April 11, 1973, plaintiff, employed as a warehouseman for Smith-Willow, was operating a hoist and moving palletized furniture on the balcony level of the warehouse. Initially the furniture was loaded on a hoist at ground level by his coworker Ollie Whit and when it reached the second level 15 feet above, plaintiff was to unload the elevator, store the merchandise, and then send the hoist back to the ground level for another load.
The elevator, designed by defendant’s president R. Gerard Calongne, consisted of a 5-by-5-foot platform without sides that moved between the ground level and balcony in an angle iron superstructure. Powered electrically by a motor at the top of the shaft, it was raised and lowered by the reeling and unreeling of a chain connected to a moving platform by an open hook. Ropes that controlled the up and down movement of the hoist were attached to a motor which was located at the top of the tower 10 feet above the balcony level. These lines dangled at the ground floor level about waist high. The lift was raised by pulling on one line and keeping pressure on it and stopped by releasing the line. The other line was similarly used to lower it.
Immediately before plaintiff was injured he had unloaded a pallet from the hoist with a hydraulic jack. Because there was an aperture between the floor of the balcony and the elevator platform of approximately 1 inch, plaintiff inserted a board in the gap that rested on the lip of the balcony opening and fitted flush between the floor and the hoist, providing an almost continuous smooth surface. Plaintiff explained he did this to prevent the wheels of the jack from sticking in the opening. After he moved the loaded pallet from the hoist, he started the elevator downward and tied the down cord to the switch so that it would continue moving downward while he stored the furniture he had just removed from the elevator. Plaintiff’s reason for tying the cord to the switch was that the elevator moved slowly and he wanted to save time.
What happened when plaintiff returned to the elevator is not clear. At the trial he stated the elevator moved continuously. In his deposition he said it was stopped. In reviewing his testimony it is obvious plaintiff felt his actions in inserting the wood in the gap and/or tying down the line to keep the elevator moving had somehow caused it to squeak. As he hurriedly dropped to one knee next to the shaft and removed the inserted board, the elevator fell. Plaintiff then lost his balance and dropped to the top of the hoist in a spread eagle position. As he looked up the shaft he noticed the chain and hook near the top of the structure. He could not be sure whether the chain was or was not descending at this time.
There is nothing in the record to explain why the elevator fell, nor can plaintiff explain why he fell. Admittedly he was not a passenger on the elevator, and there is no testimony, including plaintiff’s, that his fall was caused by being struck by the elevator. He was aware of another occasion when the hook became detached from the eye at the top of the lift. At that time the platform had reached ground level and the chain continued unreeling because pressure was still being exerted on the down line. After the weight stress of the platform was eliminated, the chain became slack and the hook came out.
Based upon the testimony of the plaintiff himself and his coworker, at the time this accident happened plaintiff had deviated in two particulars from standard operating procedure. First, he inserted the board in the gap when Ollie Whit, a fellow employee, testified this action was completely unnecessary and unauthorized. Second, he activated the platform in an uncontrolled downward motion by tying the operating cord to a switch. We also know plaintiff was attempting to hurriedly remove the board he thought was causing the elevator to squeak when it fell. His testimony indicates he felt his unorthodox operation of the hoist had created the problem. We quote:
“Q When you heard the elevator squeak, did you think that had some *890 thing to do with the board that you had inserted in there?
A Well, I really didn’t think it could have because the board was only about two feet wide.
Q Well, at the time did you think that the squeaking had something to do with the board being inserted in there by you?
A I must have or I wouldn’t have, you know, bent down to grab it so fast.
Q And at that point when you bent down to grab it the elevator was moving, is that right?
A Yes.
Q Because you had secured the line to the switch, right.
A Yes.
Q As a matter of fact, isn’t it correct that the thing that prompted you to remove the board was that you thought the board was causing the squeaking in the elevator?
A Probably.
Q Pardon?
A Yes, probably.”
In written reasons for judgment the trial court concluded:
“The primary cause of this accident was the design, construction and installation of the home-made elevator or hoist by the defendant Calongne. It had no safety factors of any kind built into it. It was dangerous per se. * * * ”
We agree with this statement to the extent that the hoist had no safety features; however, we cannot conclude plaintiff has proven the lack of safety features caused the accident. Calongne admitted it would have been safer to use a hook that could close to avoid it coming from the eye on the lift. He explained, however, the elevator was designed only to lift furniture and to be operated from the ground floor. Plaintiff admits he was instructed never to ride this elevator but he knew nothing of the instruction that it was to be operated only from the ground floor.
Liability in this case must be tested by C.C. art. 2315. To prevail plaintiff must prove fault, causation[1] and damage, and his claim may be defeated by a successful contributory negligence defense. The landlord is not burdened with the evidentia-ry requisites of C.C. art. 2695 because the warranty obligating the lessor to deliver and maintain the premises in a safe condition from which the presumption of liability arises is limited only to the lessee and may not be extended to third parties.[2] Plaintiff, as an employee of the lessee, does not have the advantage of C.C. art. 2695.
Nor is the defendant subject to the absolute liability imposed by C.C. art. 2322, which obligates the owner to respond in damages to anyone damaged by its “ruin.” The “ruin” contemplated is actual collapse of the edifice or one of its structures.[3] Had the hoist in this case simply fallen without plaintiff’s having touched its controls or deviated from normal operation procedure, it might come under the absolute liability of Article 2322. However, this is not the case.
Plaintiff failed to prove causation or fault on the part of the owner. The record does not establish why the hoist fell or to explain why plaintiff fell atop the elevator since he was not struck by it. Conversely, his testimony shows he precipitated the crisis by ignoring his employer’s instructions and substituting dangerous innovations. Had he not tied down the control line to the switch, the elevator would not have continued in its downward movement. Had he not wedged the board in the gap between the hoist platform and the balcony floor the moving hoist would not have jammed. The circumstances indicate while plaintiff was attempting to pull the wedge from the jammed platform, the motor kept running, the chain kept unwinding, and the tension that *891 kept the hoist suspended was slackened so that the hook could become disengaged from the eye. We conclude plaintiff not only failed to prove defendant’s negligence but also established his own negligence was a proximate, or at least a contributing, cause of the accident.
For the reasons assigned, the judgment appealed from is reversed.

REVERSED.

REDMANN, J., dissents with written reasons.
LEMMON, J., dissents with written reasons.

. Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (1971).

. Weiland v. King, 281 So.2d 688 (La.1973).

. Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970). See also source articles of C.C. art. 2322: C.N. 1804, art. 1386, and C.C. 1808, p. 322, art. 22.