346 So.2d 171 (1977)
Philip Glenn STRALEY
v.
CALONGNE DRAYAGE AND STORAGE, INC.
Nos. 58850, 58858.
Supreme Court of Louisiana.
May 16, 1977.
*173 J. Fred Patin, Lake Charles, for applicant in No. 58850, respondent in No. 58858.
Rene A. Curry, Jr., Drury, Lozes & Curry, New Orleans, for defendant-respondent Calongne Drayage & Storage, Inc.
Lloyd W. Hayes, Adams & Reese, New Orleans, for defendant-respondent (third party), Smith-Willow Distributing Co., Inc. in No. 58850, applicant in No. 58858.
MARCUS, Justice.
This suit involves a claim for damages for personal injuries sustained by Philip Glenn Straley when an elevator-hoist fell in a building owned by Calongne Drayage and Storage, Inc. and leased to plaintiff's employer, Smith-Willow Distributing Company, Inc. Plaintiff filed suit against the building's owner-lessor (Calongne), alleging that his injury resulted from the negligent design of the elevator-hoist involved in the accident. Calongne generally denied plaintiff's allegations of negligence and alternatively pleaded that the accident was caused by the negligence of Smith-Willow or the contributory negligence of plaintiff. Calongne additionally filed a third-party demand against Smith-Willow for indemnification for any amounts for which it might be cast in judgment under the terms and provisions of the contract for lease of the premises in effect between Calongne and Smith-Willow at the time. Aetna Casualty and Surety Company filed an intervention for workmen's compensation benefits paid to plaintiff as a result of the accident.
Finding that the accident was caused by the unsafe elevator-hoist designed, constructed and installed by Calongne and that plaintiff's actions relative to the accident were non-negligent, the trial judge rendered judgment against Calongne and in favor of plaintiff in the amount of $25,000 together with legal interest thereon from date of judicial demand until paid and also in favor of Aetna, intervenor, in the sum of $6,177.95 in reimbursement of compensation paid to plaintiff plus legal interest and for such additional compensation benefits as Aetna may pay to plaintiff in connection with the accident subsequent to trial. All costs, including the expert witness fee of Dr. Gerard L. Davis which was fixed at $150, were assessed against Calongne. Further finding that Smith-Willow's conduct had not contributed to the accident and that the lease between Smith-Willow and Calongne did not contemplate an assumption of responsibility or agreement of indemnification for damages resulting from the unsafe elevator, the trial judge rendered *174 judgment dismissing Calongne's third-party demand against Smith-Willow.
From this judgment, Calongne appealed to the court of appeal whereupon a majority of a panel of five judges of the court of appeal, with two judges dissenting, reversed the judgment of the district court, finding that plaintiff failed to prove causation or fault on the part of Calongne and that plaintiff's own negligence was a cause of the accident.[1] Upon separate applications of plaintiff and Aetna, we granted certiorari to review the correctness of this judgment.[2]
On April 11, 1973, nineteen-year-old Philip Straley was employed as a warehouseman for Smith-Willow Distributing Company, Inc. He was stationed atop a balcony or mezzanine inside the Smith-Willow warehouse and was receiving furniture for storage at that level as it was sent up by means of a hoist-type elevator from a loading platform below. The hoist apparatus had been designed by R. Gerard Calongne, president of Calongne Drayage and Storage, Inc., and had been fabricated and installed in the warehouse by Calongne employees several years prior to the lease of the building by Calongne to Smith-Willow. Mr. Calongne first got the idea for the elevator-hoist from a boat hoist operated at a local yacht club. He personally modified the design to serve in his drayage and storage business, apparently without seeking the advice of an architect, engineer or safety consultant. The device consisted of an unenclosed 5' X 5' wooden platform framed at the top and four corners by angle iron and suspended by an open hook from an electrically-powered chain hoist motor mounted near the ceiling of the building. The hoist moved up and down inside an open angle iron superstructure when activated by applying continuous tension to either an "up line" or "down line," which lines hung from the hoist motor on either side of the superstructure and dangled waist high at the loading platform level.
On the morning of the accident, plaintiff was removing furniture from the hoist on a hydraulic pallet, a relatively new piece of Smith-Willow equipment which rolled on round ball-bearing type wheels. Plaintiff, who had been working for Smith-Willow for only two months, was using the hydraulic pallet on the balcony level for the first time. As he removed a number of loads of furniture from the elevator-hoist, plaintiff experienced difficulty in rolling the pallet off of the hoist and onto the balcony storage level. Approximately one inch below the floor level of the balcony, a small ledge extended out all along the balcony's edge. Thus, when the elevator-hoist was stopped at balcony level, a small aperture existed between the floor of the elevator and the floor of the balcony. This gap, approximately one inch deep and one inch wide, accounted for the difficulty in rolling the pallet off the elevator. In order to keep the wheels of the pallet from becoming stuck in this gap, plaintiff dropped a slat from an orange crate into the aperture. The piece of wood, only one-quarter inch thick, one inch wide and two and one-half feet long, was dropped into the aperture so that one of the one-quarter inch edges rested on the recessed ledge extending along the balcony's edge and the other one-quarter inch edge created a surface between the floor of the elevator and the floor of the balcony. Plaintiff testified that the insertion of the slat in this fashion filled up the gap just enough to prevent the pallet wheels from becoming lodged in the opening. After unloading, plaintiff would remove the slat as he returned the hoist to the loading platform for more freight. Plaintiff had used this procedure without incident to remove furniture from the hoist on the morning of the accident disputed herein. Just prior to the occurrence of the accident, plaintiff had removed a loaded pallet from the hoist and started it downward. Since the hoist moved very slowly and continuous tension on the "down line" was necessary to keep it in motion, plaintiff secured the line to a nearby switch (as he *175 had done on a number of other occasions) so that he could unload the pallet while the elevator was descending and be ready to receive another load when the hoist was sent up again. When the elevator had descended about six inches, plaintiff dropped to one knee to remove the orange crate slat. Suddenly the elevator plummeted down to the loading platform fifteen feet below. Plaintiff, who fell immediately behind it, found himself lying face up spread eagle across the top of the hoist with a badly broken arm and a lacerated head. The open hook from which Calongne had designed the elevator to hang had slipped out of the yoke on top of the hoist. Plaintiff was unable to account for why or how the hoist became disassociated from the hook. He remembered only that just before the elevator fell, he had heard a squeaking sound.
It is clear from the record that, when Calongne leased the warehouse building to Smith-Willow, all parties were aware that Smith-Willow intended to use the balcony level for storing furniture and would therefore be using the hoist apparatus to move freight up to that level. In fact, Calongne had similarly used the hoist to move appliances and heavy machinery up to the balcony. Although Mr. Calongne apparently issued instructions to his own employees prior to the lease that the elevator was to be operated only from the loading platform level, this instruction was never communicated to Smith-Willow or any of its employees. The owners of Smith-Willow were merely shown how to operate the lift by pulling the lines and told that no personnel should ride the hoist. There were no written or oral instructions concerning the use of the device; neither were there any oral warnings concerning dangers which might be encountered in operating the hoist. It is undisputed that plaintiff at no time received instructions inconsistent with his use of the apparatus on the day of the accident.
The primary issues presented for our consideration herein are (1) whether Calongne Drayage and Storage, Inc. is liable to plaintiff for damages for the personal injuries sustained by him as a result of the accident, and (2) if so, what is the proper quantum of damages to be awarded?
La.Civil Code art. 2315 provides in relevant part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
La.Civil Code art. 2316 further directs:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Under these articles, the elements of a cause of action are fault, causation and damage. Pence v. Ketchum, 326 So.2d 831 (La.1976); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Weiland v. King, 281 So.2d 688 (La.1973).
This court has held that for alleged wrongful conduct to be actionable negligence it must first be found to have been a cause in fact of the resulting harm. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976); Hill v. Lundin & Asso., Inc., 260 La. 542, 256 So.2d 620 (1972). Defendant's conduct must be a necessary antecedent of plaintiff's harm but it need not be the sole cause contributing to the harm. Pence v. Ketchum, supra. If the plaintiff can show that he probably would not have suffered injury absent defendant's conduct, he has carried his burden of proof relative to cause in fact. Shelton v. Aetna Casualty & Surety Co., supra The trial judge in his written reasons for judgment concluded:
The primary cause of this accident was the design, construction and installation of the home-made elevator or hoist by the defendant Calongne. It had no safety factors of any kind built into it. It was dangerous per se. . . .
It is manifest that the design of the elevator calling for suspension by an open hook rather than a closed hook or other device was a cause in fact of the accident. Absent such design, the elevator would not have become disassociated from the hoist motor cables and neither it nor plaintiff would have fallen.
*176 Having determined that the hoist design employed by Calongne was a cause in fact of the accident, we must next consider whether or not Calongne breached a legal duty to protect against the particular type of risk involved. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. United States Fidelity and Guaranty Co. v. State of Louisiana through the Department of Highways, 339 So.2d 780 (La.1976). In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. Pence v. Ketchum, supra. Accordingly, we have stated that the proper test to be applied in determining a landowner's liability under articles 2315 and 2316 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. Shelton v. Aetna Casualty & Surety Co., supra; Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976). In the instant case, Calongne Drayage and Storage, Inc. is more than simply the owner of the premises where the injury occurred. In addition, the president of Calongne undertook to design and install a piece of equipment which he knew would be used by his own employees and subsequently by the employees of the lessee in hauling freight up to the building's balcony storage level. In our view, when an owner of commercial property undertakes to design and install on his property equipment which he knows will be used by others in the course of their employment, he has an obligation to use reasonable care to assure that the design he adopts does not present discernible serious safety hazards. If a design does present unreasonable hazards within the range of the equipment's foreseeable uses, the designer-landowner has a further duty to either provide adequate warnings or safety devices to guard against those hazards. The evidence demonstrates that defendant did not conform to this standard of conduct which is imposed to protect against the very type of risk and harm encountered in this case. Mr. Calongne admitted in his testimony at trial that it would have been safer to suspend the hoist from a closed hook in order to avoid its coming loose from the lift frame. He further acknowledged that it would have been a simple matter to do so but that he had simply not thought of it. In sum, Mr. Calongne did not give due consideration to the safety aspects of the open hook design and incorporated in the hoist neither safety devices nor warnings of any kind. Having breached a legal duty of reasonable care, Calongne is at fault within the meaning of Louisiana Civil Code articles 2315 and 2316.
Defendant contends that plaintiff's own actions in operating the hoist constituted contributory negligence. The party relying upon contributory negligence has the burden of proving it. Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own safety and protection, that standard being that of a reasonable man under like circumstances. Smolinski v. Taulli, 276 So.2d 286 (La.1973). In the absence of any warnings or instructions to the contrary, we cannot say that plaintiff's actions in operating the elevatorhoist were unreasonable. He had used the same procedure in the past without incident. The hoist had never to his knowledge become disassociated from the open hook at or near the balcony level. Accordingly, we do not find that plaintiff's right of recovery is barred by contributory negligence.[3]
The next issue for our consideration is the amount of damages for personal injuries sustained by Philip Glenn Straley as a result of the accident. The record establishes that plaintiff received a laceration of the scalp which was sutured and a severe compound fracture of both bones in the left forearm. The attending physician and orthopedic expert, Dr. Gerard L. Davis, *177 testified that plaintiff was hospitalized for six days, during which time surgery was performed in order to insert a six to eight inch pin into the larger of the two bones, the radius. A metal plate was also used to hold the ends of the bone together. The smaller bone, the ulnar, was so badly broken that it could not be joined and its condition is clinically classified as disunion. The accident has resulted in a 5-10% impairment of normal use of the arm, and Dr. Davis does not recommend that plaintiff return to any work requiring heavy lifting or stress on the arm. The injury is expected to cause continuing intermittent discomfort and surgery has left plaintiff with disfiguring scars on his forearm. The trial judge considered $25,000 to plaintiff, plus intervenor's claim for compensation benefits paid and to be paid as a result of the accident, to be a fair and adequate award for plaintiff's pain and suffering. We agree and find no abuse of discretion in the amount fixed as damages for personal injuries. La.Code Civ.P. art. 1934(3); Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974).
Finally, we note that Calongne Drayage and Storage, Inc. filed a third-party demand seeking indemnification from Smith-Willow under the terms and provisions of the written lease between the parties. The trial judge found in favor of the third-party defendant (Smith-Willow) and against Calongne on this claim. Calongne appealed from this judgment as well as from the judgment in favor of the plaintiff in the principal demand. Inasmuch as the court of appeal ruled in favor of Calongne on the principal demand finding no liability to Philip Glenn Straley, it did not reach the question of Calongne's right to indemnification from Smith-Willow under its third-party demand. Hence, this issue was not resolved in the court of appeal. Calongne had no cause to apply for relief to this court concerning its third-party demand against Smith-Willow which had not been adjudicated in the court of appeal. As a result of our reversal of the judgment of the court of appeal in the principal demand, the thirdparty demand is now in a posture for adjudication. Accordingly, we consider it appropriate to remand this case to the court of appeal for its determination of the merits of Calongne's third-party demand against Smith-Willow.[4]

DECREE
For the foregoing reasons, the judgment of the court of appeal in the principal demand is reversed and set aside, and the judgment of the district court in favor of plaintiff, Philip Glenn Straley, and intervenor, Aetna Casualty and Surety Company, and against defendant, Calongne Drayage and Storage, Inc., is reinstated; the case is remanded to the court of appeal to determine the merits of the third-party demand of Calongne Drayage and Storage, Inc. against Smith-Willow Distributing Co., Inc.
NOTES
[1] 337 So.2d 887 (La.App. 4th Cir. 1976).
[2] 341 So.2d 405 (La. 1977).
[3] See Hall v. Hartford Accident & Indemnity Co., 278 So.2d 795 (La.App. 4th Cir. 1973), writ refused, 281 So.2d 753 (La.1973).
[4] Cf. McCoy v. Pacific Coast Fire Insurance Co., 248 La. 389, 178 So.2d 761 (1965).