396 So.2d 566 (1981)
William C. ROBERTS, Plaintiff-Appellant,
v.
STATE of Louisiana, THROUGH the LOUISIANA HEALTH AND HUMAN RESOURCES ADMINISTRATION et al., Defendants-Appellees.
No. 8033.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
Writ Granted May 6, 1981.
Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellant.
Steven R. Giglio, Baton Rouge, for defendants-appellees.
Before GUIDRY, CUTRER and LABORDE, JJ.
LABORDE, Judge.
In this tort suit, William C. Roberts sued to recover damages for injuries he sustained in an accident in the lobby of the U. S. Post Office Building in Alexandria, Louisiana. Roberts fell after being bumped into by Mike Burson, the blind operator of the concession stand located in the building.
Plaintiff sued the State of Louisiana, through the Louisiana Health and Human Resources Administration, advancing two theories of liability: respondeat superior and negligent failure by the State to properly supervise and oversee the safe operation of the concession stand.[1] The stand's *567 blind operator, Mike Burson, is not a party to this suit although he is charged with negligence.
The trial court order plaintiff's suit dismissed holding that there is no respondeat superior liability without an employer-employee relationship and that there is no negligence liability without a cause in fact showing.
We affirm the trial court's decision for the reasons which follow.
On September 1, 1977, at about 12:45 in the afternoon, operator Mike Burson left his concession stand to go to the men's bathroom located in the building. As he was walking down the hall, he bumped into plaintiff who fell to the floor and injured his hip. Plaintiff was 75 years old, stood 5'6" and weighed approximately 100 pounds. Burson, on the other hand, was 25 to 26 years old, stood approximately 6' and weighed 165 pounds.
At the time of the incident, Burson was not using a cane nor was he utilizing the technique of walking with his arm or hand in front of him.
Even though Burson was not joined as a defendant, his negligence or lack thereof is crucial to a determination of the State's liability. Because of its importance, we begin with it.
Plaintiff contends that operator Mike Burson traversed the area from his concession stand to the men's bathroom in a negligent manner. To be more specific, he focuses on the operator's failure to use his cane even though he had it with him in his concession stand.
In determining an actor's negligence, various courts have imposed differing standards of care to which handicapped persons are expected to perform. Professor William L. Prosser expresses one generally recognized modern standard of care as follows:
"As to his physical characteristics, the reasonable man may be said to be identical with the actor. The man who is blind... is entitled to live in the world and to have allowance made by others for his disability, and he cannot be required to do the impossible by conforming to physical standards which he cannot meet ... At the same time, the conduct of the handicapped individual must be reasonable in the light of his knowledge of his infirmity, which is treated merely as one of the circumstances under which he acts ... It is sometimes said that a blind man must use a greater degree of care than one who can see; but it is now generally agreed that as a fixed rule this is inaccurate, and that the correct statement is merely that he must take the precautions, be they more or less, which the ordinary reasonable man would take if he were blind." W. Prosser, The Law of Torts, Section 32, at Page 151-52 (4th ed. 1971).
A careful review of the record in this instance reveals that Burson was acting as a reasonably prudent blind person would under these particular circumstances.
Mike Burson is totally blind. Since 1974, he has operated the concession stand located in the lobby of the post office building. It is one of twenty-three vending stands operated by blind persons under a program funded by the federal government and implemented by the State through the Blind Services Division of the Department of Health and Human Resources. Burson hired no employees, choosing instead to operate his stand on his own.
Prior to running the vending stand in Alexandria, Burson attended Arkansas Enterprises for the blind where he received mobility training. In 1972, he took a refresher course in mobility followed by a course on vending stand training. In that same year, he operated a concession stand in Shreveport, his first under the vending stand program. He later operated a stand at Centenary before going to Alexandria in 1974 to take up operations there.
On the date of the incident in question, Mike Burson testified that he left his concession stand and was on his way to the men's bathroom when he bumped into plaintiff. He, without hesitancy, admitted that at the time he was not using his cane, explaining that he relies on his facial sense which he feels is an adequate technique for *568 short trips inside the familiar building. Burson testified that he does use a cane to get to and from work.
Plaintiff makes much of Burson's failure to use a cane when traversing the halls of the post office building. Yet, our review of the testimony received at trial indicates that it is not uncommon for blind people to rely on other techniques when moving around in a familiar setting. For example George Marzloff, the director of the Division of Blind Services, testified that he can recommend to the blind operators that they should use a cane but he knows that when they are in a setting in which they are comfortable, he would say that nine out of ten will not use a cane and in his personal opinion, if the operator is in a relatively busy area, the cane can be more of a hazard than an asset. (Tr. 164) Mr. Marzloff further testified that he felt a reasonably functioning blind person would learn his way around his work setting as he does around his home so that he could get around without a cane. Mr. Marzloff added that he has several blind people working in his office, none of whom use a cane inside that facility. (Tr. 165)
Mr. Marzloff's testimony is similar to testimony received from Guy DiCharry, a blind business enterprise counselor with the Blind Services Division. As part of his responsibilities Mr. DiCharry supervised the Alexandria vending stand providing him with an opportunity to observe Mike Burson in a work setting. He testified that Burson knew his way around the building pretty well and that like most of his other blind operators, he did not use a cane on short trips within the building. (Tr. 132-133) He added that he discussed the use of a cane on such short trips as these with some of his other blind operators but they took offense to his suggestions, explaining that it was their choice.
The only testimony in the record that suggests that Burson traversed the halls in a negligent manner was that elicited from plaintiff's expert witness, William Henry Jacobson. Jacobson is an instructor in peripathology, which he explained as the science of movement within the surroundings by visually impaired individuals. Jacobson, admitting that he conducted no study or examination of Mike Burson's mobility skills and that he was unfamiliar with the State's vending program, nonetheless testified that he would require a blind person to use a cane in traversing the areas outside the concession stand. (Tr. 200) He added that a totally blind individual probably should use a cane under any situation where there in an unfamiliar environment or where a familiar environment involves a change, whether it be people moving through that environment or strangers moving through that environment or just a heavy traffic within that environment. (Tr. 202)
When cross examined however, Jacobson testified:
"Q. Now, do you, in instructing blind people on their mobility skills, do you tell them to use their own judgment in which type of mobility assistance technique they're to employ?
A. Yes I do.
Q. Do you think that three (3) years is a long enough period for a person to become acquainted with an environment that he might be working with?
A. Yes I do.
Q. So you think that after a period of three (3) years an individual would probably, if he is normal ... has normal mobility skills for a blind person, would have enough adjustment time to be ... to call that environment familiar?
A. Yes.
Q. That's not including the fact that there may be people in and out of the building?
A. Right.
Q. Now is it possible that if he's familiar with the sounds of the people inside a building that he may even at some point in time become so familiar with the people in an area, regular customers or what not that you could *569 say that the environment was familiar, including the fact that there are people there, is that possible?
A. Uh ... I would hesitate to say that, in a public facility where we could not ... uh ... control strangers coming in.
Q. Well, let's say that a business has a particular group of clients that are always there, perhaps on a daily or weekly basis. Now you've stated that a blind person sharpens his auditory skills in order to help him articulate in an area?
A. With instruction, yes.
Q. Right. Isn't is possible that if he can rely on a fixed travel of a fixed type and number of persons that it's possible that that is a familiar environment even though there are people there?
A. Only if they were the same people all the time and they know him, yes."
Upon our review of the record, we feel that plaintiff has failed to show that Burson was negligent. Burson testified that he was very familiar with his surroundings, having worked there for three and a half years. He had special mobility training and his reports introduced into evidence indicate good mobility skills. He explained his decision to rely on his facial sense instead of his cane for these short trips in a manner which convinces us that it was a reasoned decision. Not only was Burson's explanation adequate, there was additional testimony from other persons indicating that such a decision is not an unreasonable one. Also important is the total lack of any evidence in the record showing that at the time of the incident, Burson engaged in any acts which may be characterized as negligence on his part. For example, there is nothing showing that Burson was walking too fast, not paying attention, et cetera. Under all of these circumstances, we conclude that Mike Burson was not negligent.
Our determination that Mike Burson was not negligent disposes of our need to discuss liability on the part of the State.
For the above and foregoing reasons, the judgment of the trial court dismissing plaintiff's claims against defendant is affirmed and all costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] The United States of America was also originally made defendant but was dismissed without prejudice early in this suit on motion of plaintiff's counsel.