404 So.2d 1221 (1981)
William C. ROBERTS
v.
STATE of Louisiana, Through the LOUISIANA HEALTH AND HUMAN RESOURCES ADMINISTRATION.
No. 81-C-0974.
Supreme Court of Louisiana.
September 28, 1981.
*1222 Daniel E. Broussard, Jr., of Broussard, Bolton & Halcomb, Alexandria, for plaintiff-applicant.
Steven R. Giglio, Baton Rouge, for defendant-respondent.
MARCUS, Justice.
William C. Roberts[1] instituted this action against the State of Louisiana, through the Department of Health and Human Resources, to recover damages for personal injuries sustained in an accident in the lobby of the United States Post Office Building in Alexandria, Louisiana. Roberts fell after being bumped into by Michael Burson, the blind operator of the concession stand located in the lobby of said building. He alleged that since Burson was employed by the state and acting within the course and scope of his employment at the time of the accident, the state was vicariously liable. Additionally, plaintiff alleged that the state was negligent in failing to properly train and supervise Burson in the operation of the concession stand. Though charged with negligence, Burson was not made a party to the action.
Following a trial on the merits, the district judge rendered judgment in favor of the state and against plaintiff, dismissing plaintiff's suit at his cost. In his written reasons for judgment, the trial judge stated that, finding no employer-employee relationship between the state and Burson, the state was not vicariously liable. He further found that the state had no duty to provide on site mobility training to the blind operator. The court of appeal affirmed the judgment of the district court, concluding that plaintiff failed to prove that Burson was negligent. The court of appeal did not reach the employment relationship issue.[2] On plaintiff's application, we granted certiorari to review the correctness of that decision.[3]
The facts are generally not in dispute. Michael Burson, who was totally blind, operated the concession stand in the lobby of the post office building. On September 1, 1977, at about 12:45 in the afternoon, he left his concession stand to go to the men's bathroom located on the second floor of said building. As he was walking through the lobby toward the elevator, he bumped into plaintiff causing plaintiff to fall to the floor. Burson was not using a cane at the time of the accident. The plaintiff, an eighty-five-year-old attorney, sustained a fractured hip as a result of the accident.
The State of Louisiana, through the Division of the Blind of the Department of Health and Human Resources (formerly the Department of Public Welfare), has been providing services to the blind since 1928. Programs of services to the blind are presently authorized by La.R.S. 46:331-334.[4] *1223 One of the nine services and programs listed in the Division for the Blind Manual, Chapter VII. Services of the Division for the Blind, is the vending stand and small business enterprises program. The vending stand program has its genesis in the Randolph-Sheppard Act passed by Congress in 1936. This act gave authorization for the establishment of vending stands by blind persons in federal buildings. The act was subsequently broadened to include industrial plants and other private locations. The Division for the Blind has been federally designated as the state licensing agency for the operation of the vending stands in this state since 1955. Approximately eighty percent of the monies expended for the implementation of the program is in the form of federal matching funds. There were some one hundred and fourteen vending stands operated by blind persons in publicly and privately owned buildings in this state at the time of the trial of this matter.
A vending stand is defined in the Division Manual as a small business concession, usually in the lobby of a public building or private location, for the purpose of selling such articles as are agreed upon by the custodian of the building and the Department. The stated objective of the vending stand program is to provide blind individuals with remunerative employment. The Division Manual further states that the program has proved to be "one of the most *1224 effective means of affording a blind person the opportunity to earn his own living."
The procedure for setting up a vending stand is set forth in the Division Manual. Sites are selected and procured by the Department which builds the stand, purchases the equipment and provides the initial stock valued at approximately one thousand dollars. The right, title to and interest in the vending stand equipment and initial stock is vested in the Department.
Operators for vending stands are selected from a pool of applicants who have successfully completed a training program conducted by the Division. A license is issued to the operator for an indefinite period but may be terminated by the Department when the stand is not being operated in accordance with its rules and regulations.[5]
The Department, through its vending stand supervisors, regularly and systematically reviews the operation of the facilities. A supervisor visits the stand monthly and evaluates the general appearance of the operation, methods of merchandising, quality and variety of the stock, inventory estimates and prices being charged. The testimony of Department personnel makes clear that management services are provided to insure that this form of business opportunity remains available for the blind persons of Louisiana. If, in the opinion of the supervisor the stand is being operated in such a manner as to jeopardize either the continuance of the location or the operator's ability to make a living, the blind individual will be counseled regarding necessary modifications. A licensed operator is entitled to a hearing if dissatisfied with any action arising from the operation or administration of the vending stand program.[6]
The blind operator receives all profits generated by the concession. The state does not withhold any taxes from the operators nor does it extend any state benefits to the operators. Once the Department has paid for the initial stock, all transactions regarding merchandise are between the vending stand operator and his chosen supplier. Prices for the items are fixed by the *1225 operator within the prescribed guidelines of the Department. When an operator moves out of a stand, he is required to notify the Department in writing and is obliged to reimburse the Department for any shortage in the inventory below the one thousand dollar inventory initially provided. If the stock in the stand is valued in excess of the initial inventory, the new operator has to pay that amount to the outgoing concessionaire.
The issues presented for our consideration are: (1) whether the state was the employer of Burson, the blind operator of the concession stand, and therefore vicariously liable for his alleged negligent conduct and, if so, whether Burson was negligent, and (2) whether the state committed an independent act of negligence.
La.Civ.Code art. 2320 provides the basis for holding an employer liable for the negligent acts of his employees: "Masters and employers are answerable for damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." To come within the scope of art. 2320, the plaintiff must show the existence of an employer-employee relationship. In evaluating the sufficiency of such proof, courts have been mindful that, by its nature, vicarious liability mandates strict construction. Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968); Keen v. Pel State Oil Co., Inc., 332 So.2d 286 (La.App. 2d Cir. 1976) (on rehearing), writ denied; Strawder v. Harrall, 251 So.2d 514 (La.App. 1st Cir. 1971).
The definition of an employee is set forth in La.Civ.Code art. 163:
Free servants are in general all free persons who let, hire, or engage their services to another in this state, to be employed therein at any work, commerce or occupation whatever for the benefit of him who has contracted with them, for a certain price or retribution or upon certain conditions.
The single, most important factor to consider in deciding whether the employer-employee relationship exists for the purposes of art. 2320 is the right of the employer to control the work of the employee. Hickman v. Southern Pacific Transportation Company, 262 La. 102, 262 So.2d 385 (1972); Blanchard v. Ogima, supra. In Blanchard, we stated:
It is the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant.
We further stated:
"Servant" must be interpreted as that particular kind of agent who has a very close economic relation to, and is subject to very close control by the principal. A servant is one who offers his personal services for a price. He is an integral part of his employer's business and must submit to the control of his physical conduct as well as of his time.
In the instant case, Burson as an operator of the concession stand, had not engaged his services to the state. Moreover, the benefit of his toil inured to him and not to the state. All profits generated from the stand were income to Burson. The state neither shared in the profits nor did it pay him any form of remuneration. While Burson used the state-owned facility and equipment, he was obliged to reimburse the state for losses sustained with respect to the initial inventory supplied by the state.
Burson operated strictly under a license issued to him by the state. The services of the Department in the ongoing operation of his vending stand were in the form of supervision and business counseling. The license required him to abide by the rules and regulations promulgated by the state and federal agencies but these guidelines are clearly distinguishable from the traditional concepts of control used in defining an employer-employee relationship. As a blind person, Burson was not hired or paid wages to do work for the state. He was licensed and supervised in order to be successfully independent.
In the words of Mr. Guy DeCharry, Burson's supervisor:
[O]ur program is to rehabilitate the blind.... He's not working for us.

*1226 He's working for himself.... [I]t is not that we want to force them to do something, you know, from the agency's standpoint, but just merely from the standpoint of keeping our program going.... He's not an employee. In other words he is an independent person. We are in there to counsel him on any of these subjects but ... we can't tell him what to do.
If aggrieved by any agency action, Burson was entitled to a hearing with numerous due process guarantees. While his license was subject to revocation for violations of the regulations, the state's authority to cancel a license, even in a closely supervised occupation, must not be confused with the employer's right of dismissal.
Accordingly, we conclude that under the general principles of the master-servant doctrine as applied to the relationship between the state and Michael Burson in this case, the state was not the employer of Burson at the time of the accident and therefore is not vicariously liable for his alleged negligent conduct. Finding no employment relationship, we do not reach the issue of whether Burson was negligent.
Plaintiff also urges that we find the state to have been independently negligent for its failure to instruct Burson that he must use a cane when traversing the lobby of the post office building.
La.Civ.Code art. 2315 provides in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
La.Civ.Code art. 2316 further directs:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Under these articles, the elements of a cause of action are fault, causation and damage. Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977); Pence v. Ketchum, 326 So.2d 831 (La.1976). The existence of a legal duty coupled with a breach of that duty are prerequisites to any determination of fault. Pence v. Ketchum, supra. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. Straley v. Calongne Drayage & Storage, Inc., supra.
In the instant case, the state issues licenses only to those blind applicants who have successfully completed training programs in the operation of vending stands. While the state counsels licensees in the operation of the stands, it cannot be said that the state owes a duty to instruct them in the proper method of mobility outside the vending stands. Accordingly, we find no merit in plaintiff's contention that the state was independently negligent in this case.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DENNIS, J., dissents with reasons.
WATSON, J., dissents.
NOTES
[1] On motion of Richard L. Crowell, the duly appointed Provisional Administrator of the Succession of William C. Roberts, Jr., Probate No. 20285, Ninth Judicial District Court, Parish of Rapides, State of Louisiana, we granted an order authorizing him to be substituted as the legal successor of William C. Roberts, who died on August 11, 1981, during the pendency of this action.
[2] 396 So.2d 566 (La.App. 3d Cir. 1981).
[3] 400 So.2d 667 (La.1981).
[4] La.R.S. 46:331-334 provided at the time of this suit as follows:

§ 331. Prevention of blindness; vocational training and rehabilitation
The state department of public welfare may establish and administer an adequate system of conservation of sight and prevention of blindness, vocational training and rehabilitation for the blind and may make the rules and regulations necessary for the efficient administration thereof.
§ 332. Powers of department of public welfare
The state department of public welfare may:
(1) Make and promulgate such rules and regulations as are necessary or desirable for carrying out the provisions of this Subpart and such rules and regulations shall be binding upon parishes or other local units and their agents and upon those private agencies and individuals who participate in the benefits of this Sub-part.
(2) Administer and supervise a state-wide program for the conservation of sight and the prevention of blindness through lectures, posters, exhibits and such other methods as is deemed necessary; act in close cooperation with other state departments and private agencies; encourage vision testing in schools and the early correction of eye defects where found; and establish sight-saving classes where needed.
(3) Provide an active register of the blind to be kept up-to-date in the department of public welfare.
(4) Promote a system of economic security for the blind by administering and supervising a state-wide program of vocational training and rehabilitation for the blind by providing the necessary facilities in private and public agencies.
(5) Provide adequate home teachers who meet the required standards of training and experience.
(6) Provide the necessary facilities, equipment and initial stock, for the operation of vending stands and such other small business enterprises as may be found feasible for operation by blind persons.
(7) Assist other departments, agencies and institutions of the state and federal government, when so requested, by performing services in conformity with the purpose of this Sub-part.
(8) Administer such federal, state, parish, municipal or private funds as may be available for the prevention of blindness, vocational training and rehabilitation for the blind.
(9) Act as agent of the state to cooperate with the federal government in any matter relating to sight conservation and the welfare of the blind.
§ 333. Blind persons not to be disturbed in operation of vending stands
No blind person under this Sub-part shall be required to pay any fee, service charge or other equivalent thereof upon the operation of a vending stand in a public building nor shall the blind person be disturbed in the security of the operation of the vending stand in any way.
§ 334. Sheltered industries program for the blind
The state department of welfare may administer an adequate sheltered industries program by supplying materials to individual workers and workshops and, when the individuals, workshops and products meet the standards established by the state department, assist in the sales of the finished products as follows:
(1) Designate central gathering points where the products can be concentrated, and the state department shall keep itself informed of the number of manufactured products available at the gathering points with which any order by the State and its subdivisions may be filled in accordance with the provisions of this Sub-part.
(2) After consultation with the various departments of the state, fix standards of manufacture of the products and inform interested parties by circular letter to the end of encouraging blind persons affected by this Sub-part.
(3) If the state department deems necessary, fix a differential above market price in favor of blind persons and their products not to exceed forty percent above market quoted prices for equipment of like standard.
[5] The rules require that the licensee operate the vending stand in accordance with all applicable health laws and regulations, keep books and make inventories, devote full time to the stand and notify the Department in case of sickness or inability to continue, employ necessary competent staff to assist him in conducting his business properly and obtain approval of the Department in the hiring, discharging and setting of pay scales of such help, show preference to blind persons in the selection of his staff, pay cash for all merchandise, be responsible for damaged equipment, keep the stand open for business during agreed upon hours, and maintain a standard of personal conduct which will not reflect unfavorably upon the vending stand program.

The operator is prohibited from purchasing any equipment without the permission of the Department, extending credit to customers, using games of chance, buying, selling or possessing alcoholic beverages in the vending stand location, operating any entertainment devices in the vending stand, representing himself as owner of the stand and altering any equipment without written consent of the Department.
[6] The standards and procedures to be followed in hearings are set forth in Division for the Blind Manual, Chapter VII, 7-316(C):

(1) An operator shall have the right to be represented at the hearing by counsel or by a friend;
(2) Hearings shall be held within a reasonable time after the request therefor and at a time and place reasonably convenient to the operator;
(3) The operator shall have an adequate opportunity to present his case and for cross-examination;
(4) The director will designate a responsible official or panel acting for the department to hold the hearing;
(5) The decision shall be based upon the information adduced at the hearing. If the official or panel which held the hearing does not have authority to make the final decision, the verbatim transcript of the testimony and exhibits (or an official report containing the substance of what transpired at the hearing) together with all papers and reports filed in the proceedings, and the hearing officer's or panel's recommendation, shall constitute the exclusive record for decision by the commissioner and shall be available to the operator;
(6) The decision shall be in writing and shall set forth the issue, the relevant facts brought out at the hearing, the pertinent provisions in law and agency policy, and the reasoning that led to the decision. The operator shall be forwarded a copy of the decision immediately upon its issuance;
(7) The decision shall constitute the official action of the department in relation to the action which was the subject of the hearing.