497 So.2d 768 (1986)
Ruby Thibodeaux JOHNSON, et al., Plaintiffs-Appellees,
v.
The STATE of Louisiana, Through the DEPT. OF TRANSPORTATION AND DEVELOPMENT, et al., Defendants-Appellants.
No. 85-1126.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Rehearing Denied December 9, 1986.
Writ Denied February 6, 1987.
*769 Charles R. Albright, II, Baton Rouge, for plaintiff-appellant.
J. Wendel Fusilier, Ville Platte, for plaintiff-appellee.
Percy, Smith, etc. Alexandria, Katherine Loos of Jeansonne, Briney, Lafayette, Jerry J. Falgoust of Brinkhaus, Dauzat, Opelousas, for defendants-appellees.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
The State of Louisiana, through the Department of Transportation and Development (DOTD) appeals the trial court's damage award of $361,259.42 to Ruby Thibodeaux Johnson and her three major children for the wrongful death of Eulid Johnson and for Ruby Johnson's personal injuries. The accident occurred when the truck Eulid Johnson was driving collided with a bridge abutment on U.S. Hwy. 167, just north of Turkey Creek, while the roadway was under construction.
The plaintiffs filed suit against DOTD and their contractors. There was a bifurcated jury trial with the judge determining DOTD's liability. The jury found the decedent 100% at fault, however, the trial judge found DOTD liable under the theories of strict liability and negligence for the wrongful death of Eulid Johnson and Ruby Johnson's personal injuries. All other defendants were dismissed.
DOTD contends the trial court erred in finding that: (1) DOTD created a hazardous condition; (2) DOTD knew or should have known about the hazardous condition and failed to properly warn the motoring public of a narrow bridge; (3) DOTD insufficiently *770 signed U.S. Hwy. 167 to warn the traveling public of a bridge located on this highway; (4) Eulid Johnson was free from victim fault or contributory negligence; and, (5) the accident was not caused by a fortuitous event. We affirm.
We have been favored by the learned trial judge's well considered written reasons for judgment which set forth the facts as recited herein:
"The accident, subject of this law suit, occurred on August 31, 1983 at approximately 6:00 a.m. in the morning, Central Daylight Time. The plaintiff, Ruby Thibodeaux Johnson, and her husband, Eluid [sic] Johnson, lived approximately three miles south of Turkey Creek on U.S. Highway 167. They left their home just minutes before the accident to go to meet relatives in Pineville, Louisiana for a fishing trip. Their route to be taken was traveling north on U.S. Highway 167, up to Alexandria, then from Alexandria to Pineville.
The State of Louisiana had contracted L.H. Bossier, Inc. to overlay in excess of four miles of U.S. Highway 167 from the center of Turkey Creek where the highway intersects with Louisiana Highway 13, said highway going south to Pine Prairie, Mamou, Eunice, and other parts south.
The main signs or barricades designating highway construction off of the side of the road were on Louisiana Highway 13, with a sign on U.S. Highway 167 approximately five hundred feet from the intersection, which stated that U.S. Highway 167 North was under construction. This sign was approximately four feet by four feet.
On July 19, 1983, L.H. Bossier, Inc. commenced the construction work. They contracted some of the work to Pete Alford Contractors, Inc., which was to reinstall the guard rails and the hazard signs on two bridges within the four and a half miles under construction. This was a relatively small contract calling for the overlaying of U.S. Highway 167 for that route with asphalt. Apparently, the first thing that was done under the construction was to remove the guard rails on the two bridges along the route. The preliminary work to be done was filling in cracks, holes, etc. in the road and laying a preliminary coat of asphalt or other material on the road.
The original surface of U.S. Highway 167 was smooth asphalt with eight or ten feet of shoulder of a rough asphalt material. This would be to warn the traveling public of a change of road material if they should wander onto the shoulder. The original road also had a solid shoulder line of white striping on the side of the traveled portion of the highway. This was to designate the traveled portion of the road with the shoulder.
The contractor then began the final stage of the construction by overlaying the traveled portion of the highway, and then during the last few days of the construction job was the overlaying of the shoulder with asphalt. The entire overlaying job was completed on August 24, 1985, by L.H. Bossier, Inc. At that time, the texture of the road was all black asphalt with a temporary center line with no solid white striping designating the traveled portion of the highway with the shoulder, and there was only a slight slping [sic] of the shoulder with the traveled portion of the highway. There were some signs designating the speed limit and road construction along the stretch of road before the bridge where the accident occurred. The bridge in question was only two feet wider than the traveled portion of the highway, being some six to eight feet narrower than the shoulder of the road, with a three stripe hazard marker on the butt of the north bound corner of the bridge and a two stripe hazard marker on the south side of the bridge. There was also a hazard marker one hundred feet south of the bridge off the shoulder and on the grassy part of the highway.

*771 On the 25th day of August, 1983, L.H. Bossier, Inc. informed Pete Alford Contractors, Inc. that it was time to reinstall the guard rails on the bridges. The day before the accident occurred, Pete Alford Contractors, Inc. had completed the work on the first bridge of the job. This bridge was the one nearer to Turkey Creek. On the second bridge where the accident occurred, Pete Alford Contractors, Inc. began making holes in the asphalt to set the posts for the guard rails. No guard rails were placed on the second bridge at that time and the holes were situated north of the bridge. Pete Alford Contractors, Inc. did not add any additional signs during non-working hours to set forth the construction on the bridge. There were no signs stating a narrow bridge ahead, nor were there any cones, barrels, flashing lights or barricades, lying on either side of the bridge in question. As stated above, only a hazard marker or delinerator was on the butt of the bridge, and one off the shoulder of the bridge, approximately one hundred feet south.

The decedent and the plaintiff were traveling north and successfully negotiated the first bridge. Upon approaching the second bridge, apparently the deceased operated his small Chevrolet Love pickup truck off the traveled portion of the road onto the shoulder and struck the bridge causing his death and injurying his wife very severely.
Mrs. Ruby Johnson suffered a dislocated vertebra in her neck, suffered two fractured toes and other injuries. She was required to have surgery fusing the vertebra in her neck, and wires were used to stabilize the vertegra [sic] which wires remain in her neck. She still has and will continue to have limited motion of her neck with decreased sensation in some of her fingers, and she will be restricted in some of her activities."
The State contends the trial court erred in finding that DOTD created a hazardous condition on U.S. Highway 167 and that DOTD knew or should have known that a hazardous condition existed on U.S. Highway 167.
The duty of DOTD has been more specifically enunciated by statute and case law. LSA-R.S. 48:35 mandates that the department shall adopt minimum safety standards with respect to highway design, construction and maintenance. The law imposes upon DOTD the duty of maintaining public roads in a safe condition so as to not expose the public to unreasonable dangers. This general duty includes in its scope the more specific duty of providing proper safeguards or adequate warnings of dangerous conditions on the highway. Stephens v. State, Through Department of Transportation, 440 So.2d 920 (La.App. 2nd Cir.1983). In its written reasons for judgment, the trial court relied heavily on Rivet v. State, Through Department of Transportation and Development, 434 So.2d 436 (La.App. 3rd Cir.1983), which states that "the Department's duty to maintain safe highway shoulders encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder. LeBlanc v. State, 419 So.2d 853 (La.1982); Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). `Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.' Sinitiere v. Lavergne, 391 So.2d 821 (La.1980)." More specifically, DOTD has a duty not to create a defect or hazard in the highways. This duty, however, is usually discharged by the giving of adequate warning, which depends on the nature of the hazard to be guarded against. Von Cannon v. State, Dept. of Highways, 306 So.2d 437 (La.App. 3rd Cir.1975), writ denied, 309 So.2d 681, 682 (La.1975). DOTD owes a legal duty to alert unwary drivers to unusually perilous hazards such as an unexpected or improperly marked intersection. Forest v. State, Thru Louisiana Dept. of Trans., 493 So.2d 563 (La.1986).
In the case sub judice, plaintiffs assert that the signing at the bridge abutment and lack of shoulder striping presented an *772 unreasonable risk of harm thereby creating a hazardous condition. On the date of the accident, the overlay was complete and the first bridge had its new signs and guardrails. On the second bridge where the accident occurred, Pete Alford Contractors, Inc. had begun making holes in the asphalt to set the posts for the guardrails but no guardrails were placed at that time. The old guardrails had been removed from the second bridge. There were no signs stating a narrow bridge was ahead, nor were there any cones, barrels, flashing lights or barricades lying on either side of the second bridge. Only a hazard marker or delineator was on the butt of the bridge, and one off the shoulder of the bridge approximately one hundred feet south in the grass. Furthermore, the previously existing shoulder striping had been overlayed. When the accident occurred there was nothing to distinguish the roadway from the shoulder for an unwary motorist.
There was conflicting testimony and evidence, upon which reasonable minds may differ, as to whether the lack of warning signs created a hazardous condition at this bridge. Plaintiff's expert witness, James Justice, a consultant civil engineer, presented drawings showing warning signs and devices which would have prevented the accident. He specifically referred to the 1978 edition of the Manual on Uniform Traffic Control Devices which makes the following recommendation in reference to roadway safety during the life of a construction zone because of potential hazards: "To accomodate run-off-the-road incidents... it [the highway] is designed to provide an unencumbered roadside recovery area that is as wide as practical. Channelization of traffic should be accomplished by the use of pavement markings and signs, flexible posts, barricades and other lightweight devices which will yield when hit by erratic vehicles." Justice opined that at the time of the accident the situation presented an unreasonable risk; but that after completion, with its guardrails, striping, and adequate hazard markers, the bridge presented an acceptable and safer condition. On the other hand, William Fontenot, DOTD project engineer, testified that the signing on U.S. Highway 167 and the approach to the bridge were reasonably safe for the traveling public and met the minimal standards for warning devices on the project. However, the laydown foreman for L.H. Bossier, the prime contractor, indicated that his crew removed the guardrails, signs, and covered the shoulder striping with the state inspector present. He testified that no warning signs were erected because DOTD did not tell them to do so. George Alford, owner of Pete Alford Contractors, Inc., testified that as a subcontractor to Bossier there were no requirements in his contract to erect any warning signs or do any shoulder striping. DOTD's duty to maintain safe shoulders is breached by its failure to adequately mark and sign an approach to a bridge under construction, particularly when it is within the capability of DOTD to eliminate the hazard. Knotts v. State, Dept. of Highways, 395 So.2d 419 (La.App. 3rd Cir.1981), writs refused, 400 So.2d 669, 670 (La.1981). The nature of the hazard at this bridge site, that of ordinarily prudent motorists mistaking the shoulder portion of the roadway for the travel portion, warranted adequate warning signs to avert a collision with the bridge abutment. The absence of adequate signing created a hazardous condition to unwary motorists.
DOTD is only liable when evidence shows that DOTD had knowledge of the hazardous condition and failed within a reasonable time to correct it. U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780 (La.1976). The real dangerous condition existed the day overlaying was completed and the guardrails and signing were removed from the bridge, and the date of the accident. At all times a state inspector was present and aware of this condition. Prior to that time there existed white shoulder striping on the travel portions of the road and construction material and warning signs on the shoulder. Moreover, two similar accidents had occurred within the district as a result of substandard marking of the shoulder and the bridge *773 over Bayou des Glaise in Avoyelles Parish, both of which were known by the Department's District Administrator, Thomas Bordelon. These accidents occurred because there were no guardrails approaching the bridges, nor were there any signing plans pertaining to these bridges. Rivet, supra.
In the instant case, the construction contract made no signing requirements or reference to what the contractor should do after removing guardrails from a concrete bridge. William Fontenot, Jr., DOTD's project design engineer, attended a pre-construction conference with a representative of L.H. Bossier to review the plans and specifications. Although the plans referred to the Manual of Uniform Traffic Control Devices, the contract contained no provisions for placement of warning signs around the bridge. Based on the testimony adduced at trial, DOTD knew or should have known of the contractual signing provisions, aside from having inspectors present during construction. In view of the extent of this project, availability of material and manpower, safety, and the nature of the defect, DOTD had a reasonable time to correct this defect. U.S.F. & G. Co., supra. The public way was not maintained in a reasonably safe condition for persons exercising ordinary care and prudence. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975). Therefore, we cannot say that the trial court was manifestly erroneous in finding the bridge a hazardous condition, of which the State had knowledge, and that the State did not provide adequate signing on U.S. Hwy. 167 to warn the motoring public of the bridge and its possible dangers. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
The trial court found DOTD negligent under Civil Code Articles 2315 and 2316, in addition to finding DOTD liable to plaintiffs under Civil Code Article 2317, strict liability, as custodian of the defective condition in normal use, and that the hazardous condition caused the accident and its resulting injuries and death. Under both theories, liability hinges on whether DOTD breached its duty to the plaintiff. While the basis for determining the existence of the duty is different in article 2317 strict liability and negligence, the duty which arises is the same. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La. 1982). After careful review of the record, we find all of the elements of negligence and strict liability to have been proven by plaintiffs. Thus, DOTD can escape liability only by showing that the harm was caused by the fault of the victims, by fault of a third person, or by a fortuitous event. Loescher v. Parr, 324 So.2d 441 (La.1975).
In that regard, DOTD contends that the trial court erred in finding the deceased, Eulid Johnson, free of victim fault or contributory negligence in causing the accident. DOTD's argument is based on the fact that the Johnsons had traveled U.S. Highway 167 in the past and had prior knowledge of the construction work. We disagree. The condition of the recently overlayed road and the hazardous condition of the bridge, including a slight fog at daybreak, Bennett's oncoming car with headlights on, and pavement without shoulder striping, was enough to confuse the deceased driver and cause him to deviate from the traveled portion of the highway onto what he suspected was the shoulder. Ruby Johnson testified that upon approaching the bridge her husband, who had good eyesight and was traveling approximately 45 m.p.h., told her: "I can't see the white line." Absent white shoulder striping and proper bridge signing, Eulid Johnson was unable to distinguish the travel portion from the shoulder portion causing his truck to collide with the bridge. DOTD has not proven by a preponderance of the evidence that Eulid Johnson's actions was a legal cause of the accident sufficient to bar recovery, in that DOTD has not proved that the risk which resulted in the accident was one from which the duty violated by Eulid Johnson was imposed to protect. Wright v. O'Neal, 427 So.2d 852 (La.1983).
DOTD further contends that the accident was caused when Eulid Johnson by a fortuitous event allegedly had a sudden *774 heart attack, prior to impacting the bridge. Although Eulid Johnson was 75 years of age and had undergone several surgeries, he was considered to be in relatively good physical condition. The record is void of any evidence as to the exact cause of death. The factual conclusions of the trier of fact will not be disturbed unless they are clearly wrong. Arceneaux, supra. We find no manifest error.
For the foregoing reasons, we find the trial court judgment in favor of the plaintiffs was not clearly wrong. Costs of this appeal are assessed to the appellant.
AFFIRMED.
DOMENGEAUX, J., dissents and assigns reasons.
DOMENGEAUX, Judge, dissenting.
I have difficulty reconciling or understanding the extreme divisions of opinion between the jury which found the decedent 100% at fault and the trial judge who found the DOTD exclusively responsible for this unfortunate accident. I feel constrained to conclude that the jury was correct in its determination.
It would be my thought that the plaintiffs have failed to carry their burden of proof in establishing that the signs and markings on this highway presented an unreasonable risk of harm. The exhibits in the record show a clearly marked construction area. The highway signs conformed in every respect to DOTD requirements. The stretch of highway upon which the Johnsons were traveling was a clearly marked construction project. It was adequately posted with the signs warning of hazards, reduced speed and construction zone emblems. Approaching the second bridge there were two objects  hazard markers in place at the bridge site, both of which were directly in the line and site of travel of the Johnson vehicle. One such marker was on the bridge abutment itself and the other one was some 100 feet south of the bridge end. These markers were in addition to the other signs referred to. The visibility was fairly good on the morning of the accident and the record is void of any testimony establishing the existence of any obscurements. In addition to all of this the Johnsons had traveled this particular route numerous times before and were both aware of the on-going construction project.
The decedent, as aforesaid, was completely aware of the construction going on and admitted that he was having trouble finding his way just before the accident, yet he apparently did not slow down. It is difficult to conclude that the decedent was free from any victim fault in causing this accident.
I respectfully suggest that the majority opinion deviates from the jurisprudence and obviously places the DOTD in the untenable position of taking responsibility for control over whatever actions or inactions a motorist might or might not take while he is driving on the highways of this State.
I respectfully dissent and would rule in this case as the jury did at the trial.