689 So.2d 481 (1996)
Betty Jane Istre PHILLIPS, James Dennis Phillips, David Neal Phillips, and Timothy Dwayne Phillips
v.
ALLIANCE CASUALTY AND REINSURANCE COMPANY, Frank Huszar, Highlands Insurance Company, Allstate Insurance Company and State of Louisiana Through the Department of Transportation and Development.
No. 95 CA 2161.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*482 William M. Quin, Kentwood, for 2nd Appellants Plaintiffs.
Randall J. Cashio, Baton Rouge, for 1st Appellant State of Louisiana, DOTD.
Mary Ann Bossetta-Goodman, Covington, for Appellee Allstate Insurance Co.
Before LOTTINGER, C.J., and WATKINS, FOIL, FOGG and TANNER,[1] JJ.
FOIL, Judge.
This appeal challenges a trial court's liability and quantum determinations. After a thorough review of the record, we reverse the court's liability ruling.

BACKGROUND
On January 18, 1990, a vehicular collision between a pickup truck and an eighteen-wheeler occurred in a curve commonly called "Hayden's Curve," located along Louisiana Highway 40 in Tangipahoa Parish. Neal Nathan Phillips, who was driving the pickup truck, was killed as a result of injuries sustained in the collision. His wife and three sons filed this wrongful death action against the driver of the other vehicle, Frank Huszar, and Mr. Huszar's liability insurer, Highlands Insurance Company, alleging that Mr. Huszar was at fault in causing the accident by speeding and failing to maintain control of his vehicle in the curve. Plaintiffs also sued the State of Louisiana, Department of Transportation and Development (DOTD), alleging that the condition of the curve presented an unreasonable risk of harm and was a causative factor in bringing about the collision.
Prior to trial, plaintiff settled with Mr. Huszar and LIGA, which was brought in as a defendant due to Highland's insolvency. Following the conclusion of the lengthy trial, during which a host of traffic engineers and experts in road design testified, the trial court ruled that the curve was unreasonably dangerous because of several design deficiencies, and these design deficiencies caused the accident to occur. DOTD was assessed with fifty percent fault, while the remaining fifty percent fault was allocated to Mr. Huszar. Mrs. Phillips was awarded general damages in the amount of $600,000.00, and her sons were each awarded general damages in the amount of $125,000.00. The court also entered a loss of income award totalling $235,000.07, and special damages in the amount of $6,072.33. All awards were reduced by the percentage of fault attributable to Mr. Huszar.
*483 This appeal, taken by plaintiffs and DOTD, followed. Plaintiffs contend that DOTD should have been found 80% at fault, and they also contest the sufficiency of the loss of support award. DOTD challenges the trial court's liability determination, its general damage award to the surviving spouse and the interest award. Because of our resolution of the liability issue, we pretermit discussion of all other issues raised in this appeal.

LIABILITY
DOTD has a general duty to construct and maintain highways in a reasonably safe condition for persons exercising ordinary care and reasonable prudence. Barnes v. Thames, 578 So.2d 1155, 1164 (La.App. 1st Cir.) writs denied, 577 So.2d 1009 (La.1991). DOTD's duty to provide a reasonably safe roadway may be discharged by providing adequate warnings of a defect or hazard. The adequacy of the warning depends on the nature of the hazard to be guarded against. Johnson v. State, Department of Transportation and Development, 497 So.2d 768, 771 (La.App. 3d Cir.1986), writ denied, 501 So.2d 231 (La.1987). See also Vervik v. State, Department of Highways, 302 So.2d 895 (La. 1974). It is well settled that DOTD is not responsible for every accident which may occur on state highways, nor is it the guarantor of the safety of travellers. Barnes v. Thames, 578 So.2d at 1164.
As in any negligence action, plaintiffs have the burden of proving by a preponderance of the evidence that Hayden's Curve presented an unreasonable risk of harm to the motoring public, and that the unreasonably dangerous condition caused the resulting accident. Causation is usually a "but for" inquiry which tests whether the injury would not have occurred but for the defendant's substandard conduct. Cay v. State, Department of Transportation and Development, 93-0887 (La.1/14/94); 631 So.2d 393, 395.
The critical inquiry in this case is the propriety of the trial court's causation determination. Because causation is ultimately a factual question, our standard of review is governed by the dictates of Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Under Stobart, in order to reverse a factual determination, this court must find: (1) a reasonable factual basis does not exist in the record for the finding and (2) the record establishes that the finding is clearly wrong or manifestly erroneous. The issue to be resolved by this court is whether the factfinder's conclusion is a reasonable one. Reasonable evaluations of credibility and reasonable inferences of fact may not be disturbed on review where conflicts exist in the testimony. Nevertheless, although this court must give great deference to the trier of fact, we have a constitutional duty to review facts and reverse verdicts of the trial court that are clearly wrong based on the evidence, or are clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94); 639 So.2d 216, 221.
The facts pertinent to the liability inquiry can be summarized as follows: Hayden's Curve is located in what the experts described as a hilly, or rolling terrain, along Louisiana Highway 40. The evidence established that the curve was adequately and properly signed by DOTD. There were a series of warning signs in the vicinity to alert drivers to the presence of the curve, including a black and yellow diamond shaped warning sign showing a right angle turn in an arrow symbol. These signs, in place prior to the entrance to both lanes of travel of Hayden's Curve, contained speed advisory plates. There was some dispute as to whether the posted speed on the advisory sign at the time of the accident was 25 m.p.h. or 35 m.p.h. The investigating officers testified that they observed a speed advisory sign on each side of Hayden's Curve with a 35 m.p.h. speed limit thereon. For the purposes of this appeal, we assume that the signs in place on the morning of the accident posted speed advisory limits of 35 m.p.h. on them.
On the morning of January 18, 1990, Frank Huszar was driving an eighteen-wheeler in a westerly direction on Highway 40. Mr. Huszar admitted that he had previously travelled in this area on numerous occasions, and he was familiar with Hayden's *484 Curve. He stated that he observed a curve warning sign before he entered Hayden's Curve, but did not notice a speed limit advisory sign thereon. He testified that he was travelling approximately 45 m.p.h. when he first saw the curve ahead of him, and as he got closer to the curve, he slowed to 35 m.p.h. because he was familiar with the nature of the curve. Mr. Huszar attested that he observed Neal Phillips' pickup truck pass him in the curve, and then suddenly, he felt a jolt when the trailer of his eighteen wheeler and the pickup truck driven by Mr. Phillips collided. Mr. Huszar stated that he was certain that the cab of his vehicle was entirely in his lane of travel as he negotiated the curve; however, he was unsure about the location of the trailer as he traversed the curve.
The record establishes that the roadway was wet at the time of the accident due to rain that morning. It also showed that the accident happened as Mr. Huszar was exiting, and Mr. Phillips was entering Hayden's Curve. Additionally, the physical evidence at the scene showed that all debris was located in the eastbound lane of travel. The investigating officers observed scuff marks in the eastbound lane. However, there was no evidence of skid marks in the curve. Based upon the location of the skid marks and the debris, the officers opined that the collision occurred in the eastbound lane when the side of Huszar's trailer struck the left front of Phillips' pickup truck. Plaintiffs' expert in accident reconstruction believed that the accident occurred very near the center line. As a result of the impact, Mr. Phillips' vehicle ran into a ditch, where it caught on fire.
Plaintiffs' expert in traffic engineering and accident reconstruction, Duaine T. Evans, testified that he performed various tests on Hayden's Curve. First, he determined the degree of curvature to be 16.9 or 17 degrees. He found the travel lanes each measured 11 feet, with approximately two feet of shoulder area on each side. Mr. Evans conducted a ball bank test, from which he determined that the curve had a "safe speed" of 25 miles per hour. This is the speed, the evidence showed, at which a driver could negotiate the curve and comfortably remain intact in his seat. Mr. Evans also determined the "critical curve speed" of Hayden's Curve to be 50 m.p.h. He described the critical curve speed as that speed at which a vehicle will begin to lose frictional resistance and will "side-slip." He admitted that unless a driver reaches or exceeds the critical curve speed, the driver will not lose control of a vehicle due to side-slippage.
The central design deficiency identified by Mr. Evans and relied almost exclusively on by plaintiffs in establishing liability on DOTD's part was the degree of curvature of Hayden's Curve. Mr. Evans stated that Hayden's Curve is a severe one, and believed that the curve is inherently dangerous because critical curve speed is below the posted speed limit of 55 m.p.h. governing traffic on Highway 40, requiring a motorist to reduce speed significantly before approaching the curve.
Mr. Evans theorized that the accident resulted because Mr. Huszar was travelling very near or in excess of the 50 m.p.h. critical curve speed for Hayden's Curve. He postulated that because Mr. Huszar was travelling in excess of the critical curve speed, the rear trailer tires on his vehicle "side-slipped" into the opposing lane of travel. It was the curve's design, the expert explained, that caused Mr. Huszar to lose control of his vehicle and enter Mr. Phillips' lane of travel. In arriving at this theory, Mr. Evans admitted that he did not perform any tests to determine the speed of the vehicles involved in the collision. Rather, he rejected Mr. Huszar's statement that he travelled 35 m.p.h. through the curve, but accepted Mr. Huszar's assertion that his cab did not leave the westbound lane of Hayden's Curve. Mr. Evans admitted that if Mr. Huszar was travelling at 35 m.p.h., side-slippage could not have occurred; indeed, even if he were travelling up to 45 m.p.h. in the curve, this phenomena could not have happened. However, he insisted that the accident was caused by side-slippage, and therefore, he opined that Mr. Huszar had to be travelling at or near the critical curve speed of 50 m.p.h.
Mr. Evans also found other design deficiencies, contending that the 11 feet lane width was below the recommended 12 feet *485 for roadways of this nature, requiring vehicles to travel closer together than they would have normally. He also pointed to the virtual absence of shoulders, leaving a motorist no escape. Finally, he faulted DOTD for not having the maximum allowed super-elevation on the roadway.
The parties spent considerable time at trial attempting to show which guidelines were in effect when DOTD performed work on Hayden's Curve. Originally a gravel road, Louisiana Highway 40 was black-topped by DOTD in 1949. Later, in 1981, the road was resurfaced and the lanes were widened to 11 feet. The evidence showed that guidelines in effect at the time of the resurfacing project recommended a lane width of 12 feet on curves in excess of 5 degrees. It is clear that irrespective of what guidelines were in effect at the time DOTD undertook its work efforts, the degree of curvature of Hayden's Curve exceeded the recommended maximum degree of curvature for the type of roadway involved.
However, even if we accept the expert's testimony that the degree of curvature, lane width and narrow shoulders were all substandard, these deficiencies are insufficient to impose liability on DOTD for this accident. First, although the degree of curvature exceeded the recommended guidelines, DOTD posted a curve advisory speed of 35 m.p.h. The evidence established that the area was properly signed to apprise drivers of the curve and the proper speed to negotiate the curve. Mr. Huszar testified that he was familiar with the area, and while he did not see the speed advisory sign, he slowed his vehicle down to 35 m.p.h. in anticipation of the curve. Plaintiff's expert admitted that if Mr. Huszar was in fact travelling under 45 m.p.h., his vehicle could not have side-slipped. The evidence established that the curve was not unreasonably dangerous to a driver who heeded the advisory sign and negotiated the curve at or even above the recommended safe advisory speed. Thus, the curve did not present an unreasonable risk of harm to a reasonably prudent driver. If Mr. Huszar was going 35 m.p.h. in the curve and crossed the center line, it was driver error, not the degree of curvature, that caused the collision.
With respect to plaintiffs' expert's ultimate conclusion that Mr. Huszar was travelling very near or in excess of the critical curve speed at the time of the accident, we note that there is no physical evidence in the record to support this conclusion. Theoretically, one could only determine whether side-slippage occurred if the speed of the vehicle is ascertained. The expert assumed the existence of the fact crucial to the theory of liability without any physical evidence to corroborate this assumption. However, even if it was accepted that Mr. Huszar was going at or near the critical curve speed of 50 m.p.h. and crossed over the yellow line, as Mr. Evans opined, it is clear that he was travelling far in excess of the posted safe advisory speed. Under this scenario, Mr. Huszar's conduct in speeding in the curve on a wet roadway and refusing to heed the advisory speed sign caused the accident.
In the final analysis, under either theory regarding Mr. Huszar's speed as he negotiated the curve, it was not the condition of the curve that caused the accident; rather, the accident was caused solely by driver error. Furthermore, the other alleged deficiencies could not have played a causative role in this accident. The evidence established that the impact occurred very near the center line. Plaintiffs' expert did not offer any explanation how twelve foot, as opposed to eleven foot lanes, would have prevented this accident. Also, there was no indication whatsoever in the record that either of the vehicles attempted to escape the collision and were prevented from doing so by the narrow shoulders.
In short, after reviewing the record in its entirety, we can only conclude that the record does not reasonably support the trial court's conclusion that the alleged defects caused the accident to occur, and we find that the trial court's causation determination is manifestly erroneous. Instead, we find that the accident was caused solely by driver error.

*486 CONCLUSION
Based on the foregoing, the judgment of the trial court is reversed, and judgment is entered in favor of the State of Louisiana, Department of Transportation and Development. All costs of this appeal are assessed to plaintiffs.
REVERSED AND RENDERED.
TANNER, J., dissents and assigns reasons.
FOGG, J., dissents and adopts reasons assigned by TANNER, J.
TANNER, Judge, dissenting.
I respectfully dissent.
I disagree with reversing the fifty percent assessment of liability to DOTD. This liability was predicated on matters left to the discretion of the fact finder, i.e., whether driver error or the condition of the curve caused the accident. I believe there is sufficient evidence in the record to support either theory, in which case we are constrained to give deference to the conclusion reached by the fact finder.
Accordingly, I would vote to affirm the trial court judgment.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.